The TREGO LAND & INVESTMENT COMPANY, *Appellant*, v. I. N. REDDIG, *Appellee*.

No. 17,481.

SYLLABUS BY THE COURT.

EJECTMENT—*School Lands—Rival Claimants—Estoppel*. In an action of ejectment between rival claimants to a tract of school land, it is held, following *Burgess v. Hixon*, 75 Kan. 201, 88 Pac. 1076, and *Thayer v. Schaben*, 79 Kan. 856, 98 Pac. 1134, that upon the facts stated in the opinion, the holder of the older contract who had made default in payments and against whom a forfeiture had been declared upon proceedings not in strict compliance with the law as it then existed, is barred from asserting title thereunder as against the holder of a later contract issued after the forfeiture proceedings had been completed, who has complied with all the terms of his purchase and is in possession.

44—86 KAN.

Appeal from Trego district court.    Opinion filed. March 9, 1912.    Affirmed.

*W. E. Saum,* and *I. T. Purcell,* for the appellant.
*Herman Long,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action is in ejectment to determine the rights of rival claimants to a tract of school land in Trego county, and was submitted upon an agreed statement of facts supplemented by oral evidence, upon which findings were made and judgment was entered for the defendant.

From the agreed statement it appears that the plaintiff holds under a settlement made upon the land by Sarah E. Wolf, to whom a contract of purchase was issued on November 11, 1884, in pursuance of the statute then in force. Interest was paid as provided in the contract, together with all taxes levied against the land, until the interest for the years 1897 and 1898 became due, when default was made in the payment of $51.84 then due upon the contract. On August 15, 1899, a notice of forfeiture was issued to Sarah E. Wolf and was delivered to the sheriff, who made the following return:

"Received this notice this 16th day of August, 1899, and served the same in my county by delivering a true copy of the within notice to F. H. Burnham, agent for said land, August 17th, and also by posting a true copy of the within notice in a conspicuous place in the office of the county clerk of Trego County, Kansas, August 30, 1899, as the within named Sarah E. Wolf can not be found in my county, August 30, 1899."

Afterward, at the time prescribed by law, a forfeiture was declared by the county clerk and a memorandum thereof was entered upon the records of school-land sales. F. H. Burnham, upon whom service had been made, immediately sent the notice received by him to Jacob S. Wolf, husband of Sarah E. Wolf, who then

resided with his wife in Saline county. The notice was received by Mr. Wolf, who thereupon sent a notice to Burnham that "they would have nothing further to do with it." At the time of the service of the notice of forfeiture the land was being cultivated by John Reddig, under a lease made with Jacob S. Wolf, and Burnham had been instructed by Mr. Wolf to take charge of their interests, that is, the interests of himself and wife, and if there was any share of the crop coming to them to send it to him. All correspondence and instructions with reference to the land and the leasing thereof was by and through Mr. Wolf.

On January 21, 1905, Mrs. Wolf assigned all her interest in her contract of purchase to the appellant. On July 19, 1906, the appellant tendered the remaining principal and all interest due upon the contract to the county treasurer, who refused to receive the payments, giving as a reason that the contract had been forfeited and the land sold to another party. Afterward, in obedience to a writ of mandamus issued out of the district court, the county treasurer received all the past due interest on the contract and taxes due on the land and certified to that effect by an indorsement on the contract, which was then reinstated upon the records of the county. On August 24, 1906, the contract was surrendered to the county clerk and a new certificate was issued to appellant as provided in chapter 477 of the Laws of 1903, and all interest has been paid thereon as required by law.

The agreed statement recites the following facts concerning the title of the appellee: After the entry of forfeiture, and on April 4, 1900, John Reddig obtained a lease from the proper officers for the land in question for five years, which was declared forfeited on February 20, 1903, for failure to pay the amount due thereon on January 1, 1903. January 21, 1903, the appellee (son of John Reddig) made settlement on the land and has ever since occupied it. The land was appraised in

December, 1903, proof was made in January, 1904, and a contract of purchase was then given to the appellee accordingly, upon which he has made all payments as they became due. He has also paid the taxes on the land.

The school-land records of the county pertaining to the tract in question show memoranda written thereon as follows: "Forfeited 11-1-1899. Reinstated by order of court, Aug. 24th, 1906. . . . J. W. P. C. C."

Besides the agreed statement the evidence of Mr. and Mrs. Wolf was taken. Mr. Wolf testified:

"We had a crop of wheat to harvest in 1897, we sowed it in the fall of 1896 when we left for Saline County, then the boys and I went back in the summer of 1897 to harvest that crop, and when we had it in stack I employed or engaged Mr. Burnham, Frank Burnham, to look after the threshing. Mr. Frakes was to get one-fourth of the crop and I ordered Mr. Burnham to turn over one-fourth to him and send me the proceeds, and as far as I know Mr. Burnham did that satisfactory to all parties, and with this his agency for me ended.

"Q. Now what was done with the land the next year? A. I don't know.

"Q. You abandoned it entirely? A. I did.

"Q. Whatever business you did there with Mr. Burnham or other people in behalf of your wife you were acting as her agent? A. Well, yes.

"Q. It was her land was it not? A. Of course, the contract was in her name, but I always farmed the land and turned the crop into market and we made use of the money. Of course she was satisfied with what I did. Mr. Burnham also paid off the threshing bill and settled everything up.

"Q. And that ended any relation with him afterwards concerning the land? A. We supposed that we had forfeited the land entirely.

"Q. And you acted under that presumption? A. Yes, sir.

"Q. What was done with the land afterwards? A. I never knew what was being done with it afterwards.

"Q. And you never cared? A. No, sir; never cared.

"Q. Mr. Wolf, when did you first know that the land had been re-sold? A. When Mr. Phares wrote to me

about buying the contract.   I then wrote to Mr. Gleason, who was at that time county treasurer of Trego County, and asked him if there was any way under the law that we could redeem that land, for we supposed that it had been forfeited, and he wrote to me in reply that the land had been sold to Irving Reddig, and that there was no way to redeem the land, so then we sold our contract.

"Q.   And as I understand you, at that time you had not seen or at any time subsequent received any notice to that effect?   A.   No, sir; never received anything.

"Q.   And you assumed that it had been forfeited merely because you failed to pay the interest of 1897 and subsequent years.   A.   I had never received any notice.

"Q.   You did not know then as a matter of fact that it had been forfeited?   A.   I did not know that it had been canceled, but we supposed by law that we had forfeited all our right and claim to it.

"Q.   Because of your non-payment of interest and taxes?   A.   Yes, sir."

Mrs. Wolf testified:

"Q.   How long since you removed from Trego County, Mrs. Wolf?   A.   Since 1896.   Thirteen years last fall, I think.

"Q.   Have you resided in Saline County ever since that time?   A.   Yes, sir.

"Q.   Have you at any time returned to Trego County to visit there?   A.   No, not since the time we left there.

"Q.   Have you at any time since 1896 received from any one a notice issued by the county clerk of Trego County, Kansas, informing you of a purpose to forfeit your right to that land?   A.   I never received any notice to that effect at all.

"Q.   Mrs. Wolf, your husband did all the corresponding for you about this land, did he?   A.   Yes, sir; but I was always aware of what he wrote.

"Q.   You always knew what he wrote?   A.   Yes, sir.

"Q.   Whatever was said and done by your husband was with your knowledge and consent?   A.   Yes, sir."

The sheriff's testimony (as set out in the agreed statement) was that:

"He found no person upon the said premises and occupying the same, but as set forth in said return, he

served the notice, a copy of which is herein set forth, upon F. H. Burnham, agent for the said land, then residing in WaKeeney in the State of Kansas; that he then posted the notice, a copy of which is hereto attached and made a part of this agreed statement of facts, in a conspicuous place in the office of the county clerk as shown by his official return."

The court found the following facts additional to those agreed upon, viz.: The notice of forfeiture was in proper form; at that time Mrs. Wolf resided with her husband in Saline county; the sheriff found no person upon the premises or occupying it; Mr. Wolf received the notice of forfeiture at his residence, sent to him by Burnham, and acknowledged the receipt, stating that he and Mrs. Wolf would have nothing further to do with the matter, and that "all things done and said and written by Jacob S. Wolf in connection with said land were done with the knowledge and consent and approval of his wife, the purchaser, Sarah E. Wolf." It was also found that after threshing the wheat in the harvest of 1897, the Wolfs paid no further attention to the land, nor had anything to do with it, and that John Reddig's cultivation of the land in August, 1899, was without their knowledge or approval, Reddig simply being in possession under his lease of 1897, without any accounting or report.

The appellant, while admitting that the entry of forfeiture on the records is *prima facie* evidence that no person was in possession of the land upon whom notice could have been served as required by law (Gen. Stat. 1901, § 6356), insists that the agreed statement established the fact conclusively that John Reddig was in possession. The clause relied upon is that "the land in controversy, at the time of the service of the notice, was being cultivated by John Reddig . . . under a lease made with Jacob S. Wolf." It is argued that as it was being cultivated by Reddig he was necessarily in possession. (*Knott v. Tade*, 58 Kan. 94, 48 Pac. 561.) It will be noticed that the sheriff's return does

not show service upon any person in possession, and that in his testimony he stated that he "found no person upon the . . . premises or occupying the same." It was said in the Knott case, cited above, that "cultivation—the open, unconcealed exercise of dominion over property—is possession." (p. 96.) What the cultivation in this instance consisted of in the month of August, when service was made, does not appear, and probably it left so little indication that the sheriff was misled as to the fact. Still the opinion just referred to declares that it was the duty of the sheriff (in that case) to follow the lead, and deliver a copy to the person so in possession. Without attempting to qualify or distinguish that decision other features of this case will be considered. The notice that was served, although not upon the person cultivating the land, was in fact sent to and received by Mr. Wolf, who had actively managed the land for his wife. Thereupon Mr. Wolf at once wrote to Burnham that they would have nothing further to do with it. Mrs. Wolf's testimony and the findings show that her husband carried on all the correspondence about this land for her; that she was aware of what he wrote; and what was said and done by him was with her knowledge and consent. Thus it appears that the notice was brought to the knowledge and attention of the wife, and that through her husband—the person who had managed the land all along—she acted upon it, declaring the purpose to abandon it; and he, in harmony with her testimony, testified that they supposed they had forfeited the land entirely and acted upon that presumption, not knowing nor caring what became of it. More than five years after these proceedings, terminating in the entry of forfeiture, the Wolfs, although apparently acquiescing therein in the meantime, sold their interests to the appellant company, which can have no greater rights than its assignor.

The argument of the appellant is that nothing short

of service of the notice in strict compliance with the terms of the law can sustain a forfeiture; that if it should be held that the notice was actually received and acted upon in the manner stated, still the forfeiture proceedings were absolutely void because no service was made on John Reddig who was then cultivating the land. It is argued by the appellee that as the notice was actually received by the certificate holder and acted upon, the service was sufficient, and this appears to have been the view of the district court.

The declaration of forfeiture was made more than four years before the new contract was issued to the appellee. Mr. Wolf, acting for his wife, as we have seen, had declared that they would have nothing to do with the land; neither had taken any steps to assert any rights under the contract, but on the contrary appeared to have acquiesced in its abrogation. It must be presumed that the entry upon the record came to the knowledge of the new purchaser, who made the settlement and paid his money believing that the land belonged to the state and was subject to sale, a belief fully justified by the conduct of Mrs. Wolf and her husband acting for her. In this situation the doctrine of equitable estoppel as applied in *Burgess v. Hixon,* 75 Kan. 201, 88 Pac. 1076, and followed in *Thayer v. Schaben,* 79 Kan. 856, 98 Pac. 1134, applies. It is true that the length of time is not so great as in the cases cited, but the circumstances otherwise are quite similar, and the time was long enough to warrant the application of the rule. This estoppel results from the settlement, purchase, payments and improvements made by the appellee, after the forfeiture proceeding had been taken and noted on the record by the proper officers, and the acquiescence therein and apparent abandonment of the land by the appellant and all her conduct in the matter. The principles upon which this salutary doctrine rests are stated in the Hixon case and need not be repeated here. Parties in default in such cases, with full knowl-

Dykes v. Stafford County.

edge of the facts that the public claims a forfeiture upon proceedings of which they have knowledge, and that other persons upon the faith of such proceedings will be induced to and are making payments and improvements in full expectation of receiving the title, should at least act with reasonable promptness in asserting claims so apparently relinquished and abandoned.

The facts having been agreed upon and found, it is only necessary for this court to determine whether the judgment rendered is correct. (*Douglas v. Anderson*, 32 Kan. 350, 4 Pac. 257; Civ. Code, § 594.) Having so determined, the judgment is affirmed.