No. 23,675.

Roy B. Foy, *Appellee,* v. Callie Greenwade et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. Fraud—*Action to Set Aside Deed on Ground of Fraud—Action Barred by Statute of Limitations.* Where a person has been induced to make a quit-claim conveyance of an interest in real estate by the grantee's fraudulent representations that the grantor had no interest in the property, his action to set aside such conveyance must be brought within two years after the discovery of the fraud, and the time begins to run when the fraud is perpetrated in a case where the public records required by law to be kept are readily accessible and an examination of them would at any time disclose the interest of the grantor in the property so conveyed.

2. Limitation of Actions—*Setting Aside Fraudulent Deed—Recovery of Interest in Land.* Where one has been fraudulently induced to give a quit-claim conveyance to his interest in real estate, and he brings an action to set aside the conveyance and for a recovery of his interest in the land, the first phase of such action is for relief on the ground of fraud and such action must be begun in two years, and this rule governs although, if the relief on the ground of fraud is timely asked and obtained, the second phase of the action—to recover his interest in the property—may be commenced at any time within fifteen years.

3. SAME—*Notice of Fraud—Admission of Defendant.* The testimony of one of the quitclaim grantors, a resident of another state, contained an admission on her part which justified the trial court's finding of fact that such grantor had more than two years' notice of the alleged fraud before her action was begun.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed April 8, 1922. Affirmed in part and reversed in part.

*W. T. McBride,* and *L. H. Finney,* both of Wellington, for appellants Callie Greenwade and Charles F. Sloan; *Ed T. Hackney,* of Wellington, for appellants John B. Foy and Sara Lambe.

*Ed T. Hackney,* of Wellington, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action to set aside a deed to land alleged to have been obtained from him through defendant's fraud and for the recovery of the interest in the land affected by the alleged fraudulent conveyance. Some other deeds similarly obtained from third parties are also involved herein.

The principal facts are these: One Ira A. Foy died testate in 1906 seized of a homestead and of other real estate. He left no direct heirs except his wife, the defendant, Callie Greenwade, who survived him. By the will of Ira, there was devised to Callie a quarter section of land; some lands were devised to testator's brother Arch, and other lands to a nephew, Charles F. McCune; and a life estate in the residue was devised to Callie with remainder over to his heirs at law.

Callie declined to take under the will, and the probate court decreed certain of Ira's lands to be her separate half of Ira's property, and also awarded to her the possession of Ira's homestead as his widow. The decree on the homestead feature, somewhat equivocally reads:

"And now towit, on this 31st day of August, 1906, . . . [recital of appearances, motion to approve report of commissioners who set off and allotted to Callie her portion as widow, findings of regularity, approval, and confirmation] . . . It is further . . . adjudged that . . . [land in controversy] be and the same is hereby set off to the said Callie Foy, widow of said Ira A. Foy as a homestead to be her separate property and not subject to distribution or to payment of the debts of the said Ira A. Foy, deceased."

Ira had several brothers and sisters, John, Arch, Andrew, Carrie, Jennie, and Sara, and a brother James who had died before Ira. The plaintiff is an only son of James.

In June, 1909, Callie married Luther Greenwade. So far as the record discloses, the heirs of Ira did not then assert any rights of ownership or rights of possession by virtue of the termination of her widowhood. Callie and her husband continued in possession and in December, 1909, through the agency of Arch Foy, a brother and heir of Ira, they made a deal for the sale of this property, but the sale failed because of Callie's defective title. All the heirs of Ira seem to have been aware of the cause of the failure of the sale. On the advice of her attorneys Callie set about the task of procuring quitclaim deeds to the interests of the Foy heirs, and shortly thereafter she obtained quitclaim deeds from John B. Foy and Sara (Foy) Lambe, brother and sister of Ira, conveying their interest. In 1912 when the plaintiff, Roy Foy, attained his majority, she received a quitclaim deed from him conveying his interest.

In 1919, the defendant Callie and her husband sold the property to Charles F. Sloan for $14,400.

In 1920, Roy Foy, plaintiff, filed his amended petition herein against Callie Greenwade and her husband, and against Charles F. Sloan, their grantee, charging that the quitclaim deed which he had executed in 1912 had been obtained from him by the fraud of Callie. He alleged that—

"He was approached by the defendant and asked to make a quit claim deed to the property involved in this action. And that the defendant told him he had no interest in the property and that she simply wanted to remove any possible cloud there might be upon the property which was her home and asked him to make a deed to said property and told him if he would make a deed to said property although he had no interest in it, that she would give him $25.00 to remove the cloud and that he trusting and relying on her statement and having full confidence in her honor and integrity and believing the facts as she stated them to be, made and executed said deed and received, therefor, the sum of $25.00. That he did not know that he had any interest in said property or any right to the same until about two weeks ago when he was informed that he did have a one-fourteenth interest in said property."

Plaintiff also set up an interest in the property as a nephew and heir of Arch (deceased), who had similarly been induced to quitclaim his interest to Callie; and plaintiff also impleaded as defendants his uncle, John B. Foy, and his aunt, Sara Lambe, who had

quitclaimed to Callie under similar circumstances. Charles F. Sloan, who had purchased the property in dispute was also impleaded as were also certain heirs of a dead sister of Ira.

The defendant, Sara Lambe, filed an answer and cross-petition, admitting all the facts alleged by plaintiff, said that she was a resident of Oklahoma, that she was a sister of Ira Foy, that the defendant Callie Greenwade had fraudulently induced her to sign a quitclaim deed to her interest in the property by falsely representing that the instrument presented to her for her signature was a quitclaim conveyance of the property which had been decreed by the probate court as the absolute and separate property of Callie, and she signed it through reliance on the statements of Callie, when in fact it was a deed to Sara's interest in Ira's homestead. She also alleged that she did not discover the fraud "until less than a year ago."

John B. Foy's answer and cross-petition was to the same effect, and that he did not discover the fraud of Callie "until within the last six months."

To these pleadings, after demurrers filed and overruled, the defendant Callie Greenwade answered, with a general denial, raised the two- and three-year provisions of the statute of limitations, alleged her possession and occupancy of the property with her first husband, and thereafter until 1919, set up the decree of the probate court entered in 1906, narrated her marriage in 1909 to Greenwade, and alleged the prompt recording of the quitclaim deeds of Sara and John in 1909. She also alleged the sale of the property in good faith to Charles F. Sloan, and that she had put him in possession of it and had received cash and notes in payment therefor.

Defendant Sloan filed a similar answer, and that he had purchased without notice of any interest therein belonging to the adverse claimants, and that he relied on the record title.

These adverse claimants also set up a claim for rents contingent upon Callie's establishing a claim for compensation for improvements.

The trial court made findings of fact and conclusions of law which must be set down herein:

"Under the proper probate proceedings the interest of the widow, Callie Foy, was set off to her, giving to her one-half interest in value of all of the real estate of the deceased, and in addition to her other interest, she was permitted to remain on and occupy the homestead until it was sold in 1919. On June 14, 1909, the widow Callie Foy, married the defendant Luther Green-

Foy v. Greenwade.

wade, and ever since said last date until the sale of said homestead consisting of 160 acres the said Greenwades have been receiving the rents and profits from said tract of land.

"Roy B. Foy is the sole and only heir of James Foy, deceased, and said James Foy was a brother of Ira A. Foy, and one of the beneficiaries under the said Ira A. Foy's will. The cross petitioner, John B. Foy, is a brother and Sarah Lambe a sister of Ira A. Foy, and were beneficiaries under his said will. There were also other relatives beneficiaries but who are not parties to this suit.

"II. In the year 1909, Callie Greenwade procured from Ira A. Foy's sister, Sarah Lambe, through fraud, a quit claim deed to the property in controversy and caused the same to be immediately placed of record in Sumner County, Kansas. About the same time said Callie Greenwade, by fraud, received from John B. Foy a quit claim deed to the land in controversy and caused the same to be immediately placed of record. The cross petitioner, Sarah Lambe and John B. Foy after the deeds had been secured, *in addition to the knowledge imparted by the record of the deeds,* had more than two years prior to the beginning of this action actual notice of the fraud upon the part of Callie Greenwade in securing such deeds.

"III. The plaintiff Roy B. Foy, at the time of his uncle's death, and at the time when all the probate proceedings were had in relation to his uncle's estate, was a minor. After he became of age and on the 3rd day of October, 1912, the defendant Callie Greenwade obtained from the plaintiff Roy B. Foy a quit claim deed to the property in controversy, and she obtained said deed by false and fraudulent statements and had the said deed immediately placed of record in Sumner County, Kansas.

"IV. Some time during the year 1919, the defendant Callie Greenwade brought a suit in this court praying that her title to the land in controversy be quieted as against Andrew Foy a brother of Ira A. Foy deceased, and certain other beneficiaries under the will, and upon which suit a judgment was rendered against the plaintiff, Callie Greenwade, and finding the interests of the said defendants in the land in controversy.

"V. The only actual knowledge that the plaintiff Roy B. Foy had of the fraud practised by the defendant, Callie Greenwade, in securing from him the quit claim deed was obtained after the filing of the suit by her to quiet title against Andrew Foy and others, and within two years after the discovery of such fraud he commenced this suit to determine his interest in the land in controversy.

"VI. The value of the land in controversy is $14,400.00. The value of rentals and income less taxes paid and improvements made thereon since the 14th day of June, 1909, is $1643.18.

"CONCLUSIONS OF LAW.

"The plaintiff Roy B. Foy is the owner of a one-fourteenth interest in and to the land in controversy, and in addition to his interest therein is entitled to a judgment against the defendants Greenwade and Greenwade for the sum of $117.37, being one-fourteenth of the net proceeds of the income from 1909 to the present time, less $25.00 received at the time of the execution of the quit claim deed in controversy.

"This is an action praying for relief on the ground of fraud, and the cross petitioners Sarah Lambe and John B. Foy are barred by the statute of limitations, having had personal knowledge of the fraud for more than two years prior to the commencement hereof."

Judgment being entered in accordance with these findings, Callie Greenwade and Charles F. Sloan appeal, and so do Sara Lambe and John B. Foy.

Proceeding first to the errors assigned by Callie Greenwade, it is her contention that the allegations of plaintiff's petition are insufficient to state a cause of action for relief on the ground of fraud, and that the evidence did not support a finding of fraud. She also shows by the plaintiff's own testimony that when he was eighteen years old, ten or eleven years before this action was begun, he learned that Callie failed in her attempted sale of the property in 1909 because the heirs of Ira had some interest in it; he learned that she would need quitclaim deeds from himself and the other heirs before she could give title to the property; that she once said to him she was looking forward to the time when he would come of age, to have him sign a quitclaim deed; that he also knew that some of his elder kinsmen had signed such deeds for her, and that she had paid them varying sums therefor.

The decree of the probate court was very equivocal; it was quite susceptible of the erroneous interpretation that the homestead was unqualifiedly apportioned to Callie. It provided:

". . . The same [land in controversy] is hereby set off to the said Callie Foy, widow of said Ira A. Foy as a homestead to be her separate property," etc.

Read in connection with the rest of the decree, and aided by our knowledge of the law, we can see, of course, that only a homestead right of occupancy for the duration of her widowhood was or should have been decreed to her; but we search this record in vain for any evidence to show that she wilfully misrepresented the facts to the plaintiff, or any evidence that her statements to him were other than her opinion, founded, as it appears, upon the advice of her attorneys. It would be rather harsh to hold that the expression of such an opinion of her rights was a fraud on her quitclaim grantors, for such an opinion in similar cases has persisted in the minds of some eminent attorneys down to recent date. (*Newby v. Anderson*, 106 Kan. 477, 188 Pac. 438; *Campbell v. Durant*, 110 Kan. 30, 202 Pac. 341; *Jehu v. Jehu*, 110 Kan. 210, 203 Pac. 712.)

But it may be unnecessary to rest our judgment on the disputed

Foy v. Greenwade.

sufficiency of the allegations of fraud or on the evidence of fraud. This action was essentially one to set aside a deed obtained by fraud, although it included a claim to the real estate affected by the deed. The statute of limitations provides that an action for relief on the ground of fraud must be commenced within two years. (Civ. Code, § 17, subdiv. 3.) The time does not begin until the discovery of the fraud, or until the time when the fraud could reasonably have been discovered by the exercise of ordinary diligence. Plaintiff's quitclaim deed was recorded in 1912. The public records at that time disclosed the fee title resting in Ira A. Foy, deceased. The probate court record disclosed the subsequent disposition of the property, and the status of the title; the plaintiff knew his relationship to Ira and his rights as heir thereunder; he was also apprised that he had some claim to the property of sufficient dignity so that Callie could not give good title without a quitclaim deed from him. How, then, can he be heard to complain of any fraud of Callie, assuming that she did defraud him, eight years afterwards? The record does not show that the lawsuit in 1919 between Callie and other parties gave him any new or additional information touching any right of his in the property that he had not known for ten or eleven years. It probably did define his precise interest. But the law does not excuse laches because a person does not know his precise rights or their extent. At no time since he became of age would he have experienced the slightest difficulty in ascertaining his interest in the property if he had exercised any diligence. The public records gave him constructive notice of all he needed to know, and of all that was necessary to maintain and establish his cause of action.

"The language employed in the statute, 'until discovery of the fraud,' does not mean until the party complaining had actual knowledge of the fraud alleged to have been committed, but that constructive notice of the fraud is sufficient to set the statute in motion, even though there is no actual notice; that where the means of discovery lie in public records required by law to be kept, involving the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient notice of the fraud to set the statute in motion." (*Black v. Black*, 64 Kan. 689, 704, 68 Pac. 662.)

"Constructive discovery resulting merely from a statute, under such circumstances that the aggrieved person, although actually diligent, has no reasonable opportunity to learn of the facts constituting the fraud, may not be sufficient to set the statute in operation, but constructive discovery resulting from his failure to be diligent when diligence would have disclosed the fraud practiced upon him will always do so." (*Donaldson v. Jacobitz*, 67 Kan. 244, 247, 72 Pac. 846.)

"The existence of a public record showing facts disclosing a fraud, the perpetrator of which sustains no fiduciary relation to the victim, is deemed to impute knowledge thereof to anyone who in the exercise of reasonable care for his own protection would be led to examine it. (25 Cyc. 1190; 19 A. & E. Encycl. of L. 251.)" (*Duphorne v. Moore,* 82 Kan. 159, 162, 107 Pac. 791.)

To the same effect are: *Rogers v. Richards,* 67 Kan. 706, 74 Pac. 255; *Walline v. Olson,* 84 Kan. 37, 113 Pac. 426; *Rogers v. Lindsay,* 89 Kan. 180, 131 Pac. 611; *Davis v. Heynes,* 105 Kan. 75, 181 Pac. 566.

See, also, Note in 22 L. R. A., n. s., 208.

Counsel for plaintiff seek to override this barrier of precedents by arguing that the two years' statute does not govern the case at bar—that the action is essentially one for the recovery of real estate. But plaintiff must get rid of his deed of 1912 before he can successfully maintain his claim to the real estate, since he has parted with his title—parted with it by defendant's fraud, he says. Very well, let us concede that he parted with it through fraud. Then he needed some relief; he needed the relief furnished by the statute, and the relief must be invoked according to the statute. The statute says two years is the limitation for an action for relief on the ground of fraud. Plaintiff has waited seven years—on the theory perhaps that he has fifteen years. He would have fifteen years if he had given no title; but having given title, he does not have fifteen years to get rid of his conveyance; he only has such time as the statute allows—two years. Once rid of the alleged fraudulent conveyance he might wait as long as he chose to recover his interest in the property, not exceeding fifteen years. His suit for relief on the ground of fraud and for recovery of his interest in the property may be combined in one action, but the second count to recover the property has no standing until the matter of title is disposed of. It would be a considerable surprise to the profession to have it said that when one has been induced by fraud to convey his interest in land he may disregard his conveyance, disregard the statutory time for obtaining relief from the fraud practiced on him, and wait just as long to commence his action as if he had never made such conveyance and had never been subjected to any fraud. When a man has parted with his title through fraud, he must bestir himself to obtain relief therefrom, and he must do so within the time allowed.

Cases of fraud in the procurement of an interest in realty are as common as any other cases of fraud with which this court has had to deal, and notwithstanding the California case cited by appellee

Foy v. Greenwade.

(*Murphy v. Crowley*, 140 Cal. 141), in which two justices dissented, and a third justice only concurred because the matter was *stare decisis* in that state, no Kansas precedents can be found to support the argument that an action of this sort is governed by the fifteen years' limitation, and not by the two years' limitation. Our precedents are all to the contrary. Some of our own cases cited above' were concerning real estate, and *New v. Smith*, 86 Kan. 1, 119 Pac. 380, paragraphs 1 and 3 of the syllabus, was to the same effect. It is there said:

"The action in form is ejectment, but, as was shown by the undisputed evidence, to obtain the relief sought for the plaintiff must show that a deed of record from herself to one Schultz was fraudulently obtained from her. Looking beyond the mere form of the action to the real issue therein, we hold that the action is an action for relief on the ground of fraud and that the two-year limitation applies." (p. 7.)

From this it follows that disregarding appellant's contentions that fraud was not sufficiently pleaded and not proved, the appellee was charged with notice of his interest in the property by the records of the register of deeds and of the probate court, as well as by his knowledge of his relationship and rights of heirship to Ira A. Foy, and his action to set aside the quitclaim deed which he gave his aunt, Callie Greenwade, in 1912, through her alleged fraud was barred in two years.

It is needless to determine whether the evidence was sufficient to sustain the trial court's findings of fact that the cross appellants John B. Foy and Sara Lambe had actual knowledge of the alleged fraud of Callie Greenwade for more than two years before their cross action was begun. (*Fitzgerald v. Realty Co.*, 106 Kan. 54, 56, 186 Pac. 739.) They had the same constructive notice of the facts which controls the determination of the claim of the plaintiff, Roy Foy. If a more liberal rule be extended to Sara because she resided in another state and had no access to the record, then the excerpt from Sara's testimony quoted by her counsel, "I knew how she [Callie] had done; I told her I knew what she had done," would indicate that the trial court's finding concerning notice to Sara was correct.

It follows that the judgment of the district court in favor of the plaintiff must be reversed with instructions to enter judgment in favor of Callie Greenwade and Charles F. Sloan, and against the plaintiff; and that on the cross appeal of John B. Foy and Sara Lambe the judgment should be affirmed.

It is so ordered.