No. 33,842

Harold H. Malone and M. P. Sanderson, *Appellants*, v. R. H. Young et al., *Appellees*.

(81 P. 2d 23)

Opinion filed July 9, 1938.

*L. P. Brooks, Vincent F. Hiebsch* and *William J. Wertz,* all of Wichita, for the appellants. *Harold H. Malone,* of Wichita, pro se.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, *John Bradley, H. W. Goodwin* and *W. H. Schwinn,* all of Wellington, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action to determine the rights of the plaintiff, Harold H. Malone, and of the intervenor, M. P. Sanderson, to an interest in and to oil and gas under certain lands in Sumner county, and to oil and gas which had been produced therefrom by the defendant, R. H. Young, a purchaser at a mortgage-foreclosure sale, and by his record successors in title. Plaintiff and intervenor claimed, respectively, an equal undivided one-sixteenth and one-twentieth interest. No question is here presented concerning the exact fractional interest of each. The real issue is whether either of them was entitled to any interest under the facts pleaded. Demurrers of various defendants were sustained to the amended petition of plaintiff, and to the intervening petition of Sanderson. From those rulings they have appealed.

The demurrers against plaintiff's amended petition were as follows:

"Plaintiff's amended petition fails to state a cause of action in favor of plaintiff as against these defendants and that said amended petition shows on its face that plaintiff's alleged claim, if as a matter of fact plaintiff ever had a legitimate equitable claim, is now barred by plaintiff's laches, lack of diligence, waiver, and the applicable statute of limitations of the state of Kansas."

The demurrers to the intervening petition were upon the same grounds.

The alleged rights of the plaintiff and the intervenor are based primarily on theories of cotenancy with respect to oil and gas in place, which rights they and the principal defendant, R. H. Young, and others, had acquired by separate deeds, and on the legal effect of the acquisition of a sheriff's deed by R. H. Young at the mortgage-foreclosure sale. Other theories are also urged, all of which will be noted in the course of the opinion. We shall first consider the ruling sustaining the demurrer to plaintiff's amended petition. The amended petition will be referred to as the petition. It is rather voluminous, and before stating the facts pleaded and in order to assist the reader in more readily understanding the general situation

as therein set forth, we shall first relate the facts pertaining to the acquisition of the title by plaintiff, the intervenor, and the defendant, R. H. Young, and others to the oil and gas in place, which titles were acquired prior to the mortgage-foreclosure sale, but subsequent to the execution of the two mortgages which were foreclosed in a single action. In the petition reference was frequently made to the mortgage-foreclosure action. That action, including the judgment and sheriff's sale, must therefore be considered in determining the correctness of the ruling on the demurrer. For the convenience of the reader it should be noted that statements hereafter contained in parentheses are facts which appear from records in the foreclosure action, in which the cotenant R. H. Young purchased at sheriff's sale. Touching the question of the plaintiff's, the intervenor's and defendant Young's title to the oil and gas in place prior to the foreclosure action, we find the following facts disclosed in substance by the petition:

The source of the fee title so far as this action is concerned was in one Baumgartner. On November 10, 1921, he mortgaged the land to the Federal Land Bank of Wichita for the sum of $8,000. In February of 1929 he executed a warranty deed to the land to G. A. Edminster, who assumed and agreed to pay the existing mortgage. In March of 1929 Edminster conveyed by warranty deed the land to Frank A. and Anna J. Erker, subject to the first mortgage. (Frank and Anna Erker will be referred to as the Erkers.) In December of 1929 the Erkers executed and delivered to G. A. Edminster a note and a mortgage on the land for the sum of $2,638.39. In December of 1929 the Erkers executed and delivered to the plaintiff, Malone, a conveyance covering an equal undivided one-sixteenth interest in and to all of the oil and gas and other minerals in and under the ground. The conveyance was marked exhibit "A." The pertinent portion thereof provides:

"SALE OF OIL AND GAS ROYALTIES

"Know all men by these presents, That Frank A. Erker and Anna Erker, of Sumner county, state of Kansas, for and in consideration of the sum of one dollar and other considerations ($1) cash in hand paid by Harold H. Malone, hereinafter called grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantee an undivided one-sixteenth interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following-described land situated in Sumner county, state of Kansas, to wit: (here follows description).

" . . . . together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, with the right at any time to remove any or all equipment in connection therewith.

"Said land being now under an oil and gas lease executed in favor of W. E. Witt and assigns, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one sixteenth of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that one sixteenth of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee and in the event that the above-described lease for any reason becomes canceled or forfeited then and in that event an undivided one sixteenth of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said grantee owning one sixteenth of all oil, gas and other minerals in and under said lands, together with a one-sixteenth interest in all future events.

"To have and to hold the above-described property, together with all and singular the rights, appurtenances thereto in anywise belonging unto the said grantee herein, his heirs and assigns for a period of fifteen years from date or as long thereafter as oil and gas or either of them is produced thereon, and does hereby bind himself, his heirs, executors and administrators to warrant and forever defend all and singular the said property unto said grantee herein, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, and agree that the grantee shall have the right at any time to redeem for grantors by payment, any mortgage, taxes or other liens on the above-described lands, in the event of default of payments by grantors, and be subrogated to the rights of the holder thereof."

In February of 1930 the defendant, R. H. Young, purchased nine-twentieths of the oil, gas and other minerals in place from the grantees of the Erkers, his immediate grantor being M. P. Sanderson, who at that time held an undivided interest in one half of the minerals in place. The conveyance from Sanderson to Young is identical in form with exhibit "A," heretofore mentioned, except as to the names of the grantor and grantee. R. H. Young conveyed a one-twentieth interest in the minerals to J. A. Conrad and Howard V. Baker, respectively.

The petition further alleged in substance:

The Erkers defaulted in the payment of the mortgage liens, but through no fault of plaintiff. At the time of the sale under mortgage foreclosure, the defendant Young was a cotenant with the plaintiff in the oil and gas in place. In the foreclosure action by the Federal Land Bank of Wichita, all cotenant owners of the oil and gas

in place, including the plaintiff, Malone, were made parties defendant. (The foreclosure action was filed April 28, 1931. Judgment was rendered July 27, 1931, and an order of sale was issued September 1, 1931.) The property was sold to the defendant, R. H. Young, on October 5, 1931, and the sale was confirmed on October 21, 1931. The sale price was $8,061.40. Due to the mortgage moratorium and extensions thereof, the sheriff's deed was not issued to R. H. Young until May 1, 1934.

The petition in substance further stated:

The judgment foreclosing the mortgages ordered the property sold to satisfy the liens. No rights or claims between plaintiff and his co-party defendants in said action were adjudicated, nor justiciable therein. The petition of the Federal Land Bank of Wichita, in the foreclosure action, specifically set forth the record interests of all cotenants to the oil and gas in place, including that of the plaintiff Malone, and that of the intervenor Sanderson, in the instant case, as well as that of the cotenant Edminster and that of the defendant R. H. Young. It alleged in substance that each and all of such interests were junior and inferior to the interest, equity and title of the plaintiff mortgagee. The plaintiff Malone, in the instant case, and his wife appeared and moved for additional time within which to plead, but later defaulted. Publication service was had on Sanderson, the intervenor, in the instant case. Edminster foreclosed his second mortgage on this land in that case against the Erkers. He and the plaintiff in the foreclosure action prayed for a decree foreclosing and forever barring the right, title, estate or interest of all other parties defendant. The foreclosure judgment directed the land be first offered for sale subject to certain oil and gas leases and subject to certain royalty interests obtained under mineral deeds, and that in the event the land did not bring a sufficient amount to satisfy the judgment, interest, taxes and costs, it should be sold clear, free and discharged of every oil and gas lease and mineral rights. The judgment further provided:

"It is further considered, ordered, adjudged and decreed by the court that upon the confirmation of the sale of said described real estate, the sheriff of said county issue to the purchaser at said sale a good and sufficient certificate of purchase for said real estate as by law provided; and in case said described real estate is not redeemed from said sale within eighteen months from the date thereof, that the then sheriff of said county shall upon the surrender of said certificate of purchase issue and deliver to the purchaser, or his assigns, or its successors or assigns, as the case may be, good and sufficient deed or deeds to

said described real estate; and that he put such purchaser or purchasers in the full, quiet and peaceful possession thereof as against said defendants and each and every of them, and any and all persons claiming by, through or under them, or either or any of them; and that said defendants, and each and every of them, and any and all persons whomsoever claiming by, through, or under them, or any of them, upon the confirmation of said sale be, and they are hereby by the court forever barred, foreclosed and precluded from having or claiming to have any right, title, interest, estate, equity or lien in or to said described real estate, or any part thereof, except only that in the event said real estate is sold subject to the oil and gas leases of the defendants, Slick, Pryor & Lockhart, Inc., and the Darby Petroleum Corporation, as recorded in Book E-10, at page 180, and Book E-10, at page 179, and the royalty interests of the defendant, Carl Pursel, as acquired under and by virtue of the mineral deed or grant recorded in Book F-4, at page 496, then and in that event the said defendants, Slick, Pryor & Lockhart, Inc., and the Darby Petroleum Corporation, and Carl Pursel shall not be barred, foreclosed or precluded from their respective interests in and to said real estate as acquired under and by virtue of said oil and gas leases and said mineral deed or grant."

No sufficient bid was received under the first offer of sale subject to the oil and gas and mineral rights, and the land was sold to R. H. Young, free and clear of such rights. That sale was confirmed as having been made in conformity with law and equity and the judgment of confirmation barred all rights of each and all of the defendants. The period of redemption was fixed at eighteen months. (None of the defendants redeemed.)

The petition, in substance, further stated:

The defendant, Young, was the only party at the foreclosure sale and he bid the amount of the first-mortgage lien and received a purported certificate of purchase. Young knew plaintiff was his cotenant but did not notify plaintiff of the transaction. Plaintiff had no knowledge thereof whatsoever, and plaintiff and Young well knew plaintiff had no knowledge thereof. The Erkers were also cotenants in the oil and gas in place, and have at all times been and now are in possession. At the time of the purported foreclosure sale and at all times thereafter said lands had and have a value for oil and gas development greatly in excess of the mortgage liens and foreclosure judgments, which fact was at all times well known to the Erkers and the defendants, R. H. Young, George Young and E. B. Shawver, but was not known to plaintiff. The development of the land for oil and gas was hindered, delayed and postponed because of the unsatisfied mortgage liens and the foreclosure sale and redemption rights, which facts were also well known to the defend-

ants, but not to the plaintiff. The oil and gas lease referred to in exhibit "A" became canceled and forfeited on or about May 1, 1934, and in a manner and at a time unknown to the plaintiff but known to the defendants. By virtue of the forfeiture of the lease plaintiff's interest in the oil and gas in place became and is an undivided one sixteenth, including both the royalty and lease interests. The foreclosure judgment lien and the bid of plaintiff's cotenant, Young, were satisfied out of the lands, and in substance a redemption was accomplished through the following plan, devices and arrangements, entered into before and conditioned upon the issuance of the purported sheriff's deed. Such transactions and coincidence of events as hereafter related, all constituted and formed a single transaction by and between plaintiff's cotenants, R. H. Young, George Young, and the defendant, E. B. Shawver, to wit:

(a) On March 31, 1934, the Erkers filed a motion in the foreclosure action for additional time in which to redeem, in which they represented that they believed themselves able to redeem the lands from foreclosure sale. The journal entry on such motion was filed May 1, 1934, and recited that the Erkers and R. H. Young appeared in court and that the motion was overruled and the sheriff directed to forthwith execute and deliver to R. H. Young a sheriff's deed.

(b) The foregoing motion and order and the following instruments, all dated May 1, 1934, and May 2, 1934, were prepared, executed and delivered before and simultaneously with the execution and delivery of the sheriff's deed. All of the instruments were filed for record at the same time, namely, May 2, 1934. First, sheriff's deed recorded 8 a. m.; second, a purported oil and gas lease to J. M. McMorrow, recorded 8:05 a. m. On May 3, 1934, this lease was assigned to E. B. Shawver, and the assignment was not recorded until April 27, 1935; third, a purported conveyance by R. H. Young to George Young was recorded at 8 a. m., conveying an undivided three fourths of the minerals subject to the lease. Since the discovery of that transaction, plaintiff has learned that George Young is the son and partner of R. H. Young, and that the conveyance was without valuable consideration and to the use and benefit of R. H. Young and was made for the purpose of concealing from the record the true ownership of the estate and to deprive plaintiff of his interest therein. Fourth, a purported warranty deed from R. H. Young, to the defendant Doretta Erker (nee Shuck), was recorded

at 8:15 a. m. Since the discovery of that transaction plaintiff has learned that Doretta Erker (nee Shuck) is the daughter of the Erkers, and that the conveyance to her was for the use and benefit of the Erkers and was without consideration from her and was made for the purpose of concealing the true grantee, and was a part of the plan to deprive plaintiff of his estate and for the purpose of preventing the record title from vesting in the Erkers in such manner as to inure to plaintiff as an after-acquired title by virtue of warranties contained in exhibit "A"; fifth, a purported mortgage was executed by Doretta Erker (nee Shuck) to the defendant E. B. Shawver, on the land, for $7,000, reciting an intention against merger with the oil and gas lease referred to herein as "second," was recorded at 8:20 a. m. Plaintiff has learned since the discovery of that transaction and alleges this mortgage was executed by the grantor as agent for and to the use and benefit of the Erkers, and in furtherance of the plan of concealment and for the purpose of depriving plaintiff of his estate in the property; sixth, a purported assignment of oil and gas runs by Doretta Erker, to E. B. Shawver, as further security for the mortgage to E. B. Shawver, was recorded at 8:25 a. m., and was executed by the maker as agent for and to the use and benefit of the Erkers. (This assignment covered all oil and gas royalty to be paid from the undivided one fourth of the minerals, as additional security for the $7,000 mortgage. It was executed May 1, 1934, and recorded on May 2, 1934.)

The petition further alleged in substance:

On or about December 30, 1935, the defendant E. B. Shawver caused to be formed the defendant The Stelbar Oil Corporation, in which he owned and controlled a majority of the stock and of which he was the president and general manager. On or about December 30, 1935, E. B. Shawver caused to be assigned to that corporation the purported oil and gas lease without consideration and that the corporation had full knowledge and notice of all of the transactions herein and of the manner in which E. B. Shawver acquired the lease and of plaintiff's interest and estate therein. (The assignment purports a consideration of one dollar.) The corporation was formed for the purpose of developing the land for oil and gas and in furtherance of the plan to deprive plaintiff of his interest. The corporation and E. B. Shawver, with full knowledge of plaintiff's equities, have developed the lands for oil and gas, and that a great amount of oil and gas has been produced therefrom. The Crude Oil

Pipeline Company, and the Kanotex Refining Company, with full knowledge and notice of plaintiff's interest and estate, have taken a large amount of oil and gas from the premises, and plaintiff has received no part thereof.

That on or about March 19, 1937, the arrangements heretofore mentioned as of May 1, 1934, were consummated by the conveyance and delivery of a warranty deed from Doretta Erker (nee Shuck), to the Erkers, and by the satisfaction of the $7,000 mortgage, out of the lands and by the release of that mortgage by E. B. Shawver, and by the reassignment by him of the oil and gas runs to the Erkers. (The records referred to in the petition disclose that the assignment of oil and gas royalty by Shawver to the Erkers was made on April 21, 1937, which was after Doretta Erker had conveyed the land to the Erkers on March 19, 1937, for one dollar and other good and valuable considerations. At the time Shawver assigned the oil and gas royalty to the Erkers, which royalty he had theretofore held as part security for the mortgage debt, the $7,000 mortgage had been paid in full.)

That the foregoing transactions were not entered into in good faith by the defendants, and were planned and consummated by plaintiff's cotenants, for the purpose of removing from the lands the mortgage-foreclosure liens and the rights of redemption in such manner as to deprive plaintiff of his estate and interest therein to the unjust enrichment of the defendants, and at the cost and expense of the plaintiff. Plaintiff had no actual knowledge or notice whatsoever of the transactions herein alleged subsequent to and other than the summons of said foreclosure action and did not discover the facts herein stated until about June 21, 1937, when he was requested by his cotenants to execute a quitclaim deed. The fair and reasonable market value of the seven-twentieths interest of R. H. Young, in the oil and gas in place, which he held prior to the mortgage foreclosure were, together with the $7,000 received by him as the proceeds of that mortgage, greatly in excess of the amount R. H. Young bid for the property at sheriff's sale. The defendant, R. H. Young, has been fully reimbursed for the amount of his bid and R. H. Young and George Young have in fact paid no consideration for the undivided mineral estates belonging to their cotenants. The defendant, E. B. Shawver, well knew the value of the interest of R. H. Young, and that plaintiff was entitled to the benefits of the satisfaction of the first-mortgage foreclosure lien. Shawver has paid no consideration

to plaintiff for plaintiff's interest in the leasehold estate and that he and his assignee, the Stelbar Oil Corporation, hold plaintiff's interest for the use and benefit of plaintiff. By reason of the warranties contained in the mineral deed marked exhibit "A," from the Erkers to this plaintiff, the plaintiff is entitled to have the interest in the minerals conveyed by such deed for the reason that the Erkers subsequently acquired the title thereto and are now estopped from claiming title to such interest adverse to this plaintiff. The defendants, or some of them, have expended money in developing plaintiff's portion of the mineral rights by the payment of taxes and liens chargeable against plaintiff's interest, and other expenses unknown to plaintiff. He believes the amount expended for the development of his interest does not exceed $25,000. An accounting should be required and that while plaintiff does not know the exact amounts of moneys due him after the payment of all necessary amounts, he believes his just and proper share for his one-sixteenth interest is in the amount of $50,000. Plaintiff is willing and tenders into court his proportionate part for the satisfaction of the mortgage and judgment lien.

Were the demurrers to the petition of the plaintiff, Malone, properly sustained? The parties have written able briefs on the general subject of the effect of a redemption or purchase by a cotenant, at foreclosure sales. They have argued the general rule on those subjects and the exceptions thereto. We do not deem it necessary to treat those subjects in the instant case. The question of plaintiff's laches and the statutes of limitation would still remain unanswered, and we prefer to go directly to those issues.

Did the doctrine of laches bar his claim? How long could the plaintiff Malone delay the assertion of his rights in view of the circumstances in this case? A summary of a few pertinent facts will be helpful. That the interests of the mortgagees were paramount to plaintiff's interest, and that such fact was adjudicated in the foreclosure action to which plaintiff was a party, is clear. It is not contended that plaintiff could not have protected his rights by purchasing the property at sheriff's sale. That he might have redeemed the property and that he could have been subrogated to the rights of the mortgagee under the terms of his mineral deed, exhibit "A," is obvious. He saw fit not to avail himself of these rights but now insists, as a matter of equity, he is entitled to share in the subsequent benefits, which have accrued by reason of the efforts of his cotenant

Young, and his successors in interest. The foreclosure action was filed April 28, 1931. The property was sold on October 5, 1931, in an action to which he was a party and in which he had personally appeared and later defaulted. According to his petition he did at least know that R. H. Young was his cotenant. He permitted that cotenant to purchase the property with his own money, not with the money belonging to plaintiff or other cotenants. Plaintiff made no bid. He knew from the judgment of foreclosure rendered on July 27, 1931, that his rights would be cut off at the sheriff's sale unless he protected them. The sale to R. H. Young was confirmed on October 21, 1931, as having been made in accordance with law and equity. In that judgment of confirmation plaintiff's rights were cut off and the sheriff was directed to execute and deliver a certificate of purchase to R. H. Young, plaintiff's cotenant, free and clear from plaintiff's interest. The plaintiff did nothing. Due to the mortgage moratorium and extensions thereof, the period of redemption was extended and no sheriff's deed was executed until May 1, 1934. During the period of two years and almost seven months between the date of sheriff's sale and the delivery of the sheriff's deed plaintiff made no offer to redeem or to contribute his portion of the purchase price. The first offer to contribute was made in his petition, which was not filed until July 14, 1937. That offer was not made until after his interest, according to the allegations of his petition, had been developed and enhanced by the expenditure of much money and the efforts of R. H. Young and his record successors in title, to the handsome net value of $50,000. The petition contains no allegation of any development of the property for oil and gas prior to the purchase by Young at sheriff's sale on October 5, 1931, but it does state in effect that the lease to which plaintiff's mineral deed, exhibit "A," was made subject had become forfeited on or about May 1, 1934. From October 5, 1931, the date of sale, and the offer to contribute on July 14, 1937, constituted a period of five years and approximately nine months during which plaintiff sat idly by and did absolutely nothing to assert or protect his rights against a cotenant who had acquired title at a foreclosure sale and in an action to which he was a party and for his own reasons defaulted. During this period the land was being developed for oil and gas in plain open view. Plaintiff's excuse for failure to act sooner was that he had no knowledge of the value of the land for oil and gas purposes and that he did not know R. H. Young had purchased the property at sheriff's sale.

No reason is stated why he did not know these facts or why he could not have discovered them in the exercise of ordinary diligence. Plaintiff also pleads in substance that the various transactions of May 1, 1934, constituted a single transaction and that they and the various conveyances made at that time and after the delivery of the sheriff's deed were not made in good faith but were planned by the cotenant R. H. Young and his purported successors in title as a device and for the purpose of removing the mortgage liens, defeating the rights of redemption, concealing the true title to the estate and finally for the purpose of depriving him of his estate and interest.

Assuming, without deciding, that the purchase by Young, under all the circumstances, constituted a redemption, the plaintiff, as a cotenant, was obliged to assert his rights within a reasonable time. (*Moon v. Moon,* 107 Kan. 466, 192 Pac. 840; *Rutland Savings Bank v. Norman,* 125 Kan. 797, 802, 266 Pac. 98; *Hayden v. Hughes,* 147 Kan. 511, 77 P. 2d 938; *Starkweather v. Jenner,* 216 U. S. 524, 30 S. Ct. 382, 54 L. Ed. 602; 62 C. J. Tenancy in Common, § 77, p. 459, § 112; Annotation, 54 A. L. R. p. 910.) In the Starkweather case it was said:

"Appellant did not act with that degree of promptness which equity demands. He has slumbered over the question of whether he should elect to let Jenner hold on to his purchase or require him to give the benefit of his bargain to his cotenants. A delay of not less than four years, during which there has been a large appreciation in the value of the property, is unreasonable." (p. 530.)

What constitutes reasonable time within which a person may assert his claim generally depends upon the circumstances in the particular case. (*Campbell v. Warnberg,* 133 Kan. 246, 299 P. 2d 583.) The doctrine that a person claiming an interest or a right may be required to assert it promptly is especially applicable to oil and gas properties which are subject to rapid fluctuation in value. That he will not be permitted to engage in speculative delay until the value of such property has greatly appreciated, is definitely established. (*Kirk v. First National Bank,* 132 Kan. 404, 407, 295 Pac. 703; *Campbell v. Warnberg,* supra; *Hanley v. Federal Mining & Smelting Co.,* 235 Fed. 769; *Starkweather v. Jenner,* supra; 21 C. J., Equity, Speculative Delay, § 220.) Of course, mere delay in asserting title will not ordinarily defeat an action on the ground of laches unless there has been a change in the value of the properties or in the relation of the parties which would cause prejudice to the adverse party. (*Spradling v. Hawk,* 133 Kan. 545, 550, 1 P. 2d 268.) In the

instant case, however, the property had been developed and its value established as a result of large expenditures of money and the industry and enterprise of others while plaintiff remained utterly passive. So long as the risks were being taken by others the alleged breach of a trust relation by his cotenant, Young, and the fraudulent plan and device of Young and others to deprive him of his interest was of no apparent concern. When, however, those risks were transformed into profits, principles of equity underlying the relation of cotenants, and the principles of equity which guard against the bad faith and the fraudulent plans and devices of others became dominant and controlling considerations. Under such circumstances equity will not grant the relief sought. (*Kirsch v. City of Abilene*, 120 Kan. 749, 244 Pac. 1054.) Plaintiff pleaded he had no knowledge of the value of the land for oil and gas and that he did not know that Young, his cotenant, had purchased the property at sheriff's sale. Such ignorance alone did not excuse his delay. Bogert, in his work on Trusts and Trustees, under the subject of laches, says:

"But mere proof of ignorance is not enough to excuse delay. The ignorance must have been reasonable—must have existed despite the exercise of due care to learn the facts and to protect the cestui's rights. A cestui que trust cannot sit idly by and close his eyes to what is going on around him. 'One who would repel the imputation of laches on the score of ignorance of his rights must be without fault in remaining so long in ignorance of those rights. Indolent ignorance and indifference will no more avail than will voluntary ignorance of one's rights.' As a Pennsylvania court has said: 'Laches is not excused by simply saying: "I did not know." If by diligence a fact can be ascertained, the want of knowledge so caused is no excuse for a stale claim. The test is not what the plaintiff knows, "but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him." ' " (Vol. 4, p. 2747.)

What about the statutes of limitation? That plaintiff, a party to the foreclosure action, had such notice of the fact that Young purchased the property at sheriff's sale as would set in motion the statute of limitations, is no longer an open question. (*Smith v. Rector*, 135 Kan. 326, 10 P. 2d 1077; *Kittel v. Smith*, 136 Kan. 522, 16 P. 2d 538; *Bluff City v. Western Light & Power Corp.*, 137 Kan. 169, 19 P. 2d 478.) Plaintiff also asserts numerous instruments of conveyance were recorded on May 2, 1934; and that these conveyances were likewise a part of the general plan and device to conceal the true title of the property, and to divest him of his interest. The constructive notice resulting from their recording was, of course, sufficient to start the running of the statute of limitations.

(*Keys v. Steele*, 143 Kan. 826, 829, 57 P. 2d 28, and cases there cited.) In order to obtain relief from the alleged fraudulent conduct, plaintiff was required to move within two years under the provisions of G. S. 1935, 60-306, *third*, and did not have fifteen years within which to bring an action for the recovery of real estate under the provisions of G. S. 1935, 60-304, *fourth*. (*Main v. Payne*, 17 Kan. 608; *Kahn v. Klaus*, 64 Kan. 24, 67 Pac. 542; *New v. Smith*, 86 Kan. 1, 110 Pac. 380; *Foy v. Greenwade*, 111 Kan. 111, 206 Pac. 332; *Pinkerton v. Pinkerton*, 122 Kan. 131, 251 Pac. 416; *Bell v. Bank of Whitewater*, 146 Kan. 901, 906, 73 P. 2d 1059, and *Herthel v. Barth et al.*, post, p. 308, 81 P. 2d 19, this day decided.) While the statute of limitations does not begin to run until the discovery of the fraud, plaintiff, under the general rule heretofore stated and under the repeated decisions of this court, is not relieved from such discovery by simply alleging ignorance of the fraud, but is required to plead facts which disclose inability to discover the fraud by the exercise of ordinary diligence. (*Dusenbery v. Bidwell*, 86 Kan. 666, 677, 121 Pac. 1098; *Foy v. Greenwade*, supra; *Bluff City v. Western Light & Power Corp.*, 137 Kan. 169, 176, 10 P. 2d 478.) The public records of Young's purchase and the conveyances recorded on May 2, 1934, were constructive notice to plaintiff of the alleged fraud. Exercise of reasonable diligence required an examination of those records, which necessarily would have disclosed the alleged fraud. (*Bluff City v. Western Light & Power Corp.*, supra, pp. 175, 176.)

In the event Young's purchase at sheriff's sale as a cotenant, and his later conveyance of title to others, be regarded as a breach of an implied trust, plaintiff's action is nevertheless barred by both laches and the statute of limitations, as both defenses are applicable to implied trusts. (*City of Clay Center v. Myers*, 52 Kan. 363, 35 Pac. 25; *Kahn v. Klaus*, 64 Kan. 24, 67 Pac. 542; *Bell v. Bank of Whitewater*, 146 Kan. 901, 906, 73 P. 2d 1059; 37 C. J. Limitations of Actions, Implied or Constructive Trusts, § 270; Restatement, Restitution, §§ 148, 179.) See, also, *Herthel v. Barth et al.*, post, p. 308, 81 P. 2d 19 (this day decided).

In view of what has been said, it also follows the title of R. H. Young's successors cannot be disturbed.

Plaintiff further urges he is entitled to a one-sixteenth interest in the oil and gas in place, and that produced, under the theory of after-acquired title. The contention is untenable. When he bought his interest in the mineral rights he received from his grantors, the

Erkers, what that deed intended to convey. He is entitled to receive no better title now. The mortgages on the land were both of record when plaintiff obtained his mineral deed, exhibit "A." The deed when considered in its entirety cannot be construed to constitute a warranty against encumbrances. Clearly it was in the contemplation of both the Erkers and the plaintiff, that the *land* was encumbered with mortgages or a mortgage. The parties saw fit to insert an express provision in the deed to the effect that the grantee, this plaintiff, should have the right to protect his interest in the minerals at any time by redemption and subrogation to the rights of the mortgage holder. Mortgages existed prior to the execution of the mineral deed and the rights of the mortgage holders were paramount to those of plaintiff under the mineral deed. This court had before it for consideration the same provision in substance in the case of *Crum et al. v. Oil Co.*, 117 Kan. 54, 230 Pac. 299. The question there involved the effect of such a provision in a contract for the sale of an oil and gas lease. It was said:

"The lease apparently contemplated the possible existence of mortgages on the real estate and defined the rights of the lessee under such circumstances. The lease provided:

" 'Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgage, taxes or other liens on the above-described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.'

"It will be noted that while the lessor agreed to defend the title, he did not warrant the real estate to be free from encumbrances; the lessee was given the right to redeem from any and all such encumbrances and was to have subrogation therefor. This provision in the lease contract precludes the idea that the land was warranted to be free from encumbrance; and certainly such a contract stipulation did not render the title unmerchantable, since the lessee acquired precisely what he bargained for." (p. 56.)

So, in the instant case, plaintiff obtained by his royalty deed what he bargained for and no more. He is in no position to contend, after he permitted the rights which were deeded to him and the remaining rights of his grantors to be cut off at mortgage-foreclosure sale, that he is now entitled to receive a better title than that which was intended and granted in the first instance. Moreover, plaintiff is not only claiming in this case the so-called after-acquired title of his grantors, but he is in fact claiming title to oil and gas produced by others over such a period of time and under such circumstances as

preclude him from asserting an interest therein, both under the doctrine of laches and the statute of limitations.

What about the ruling sustaining the demurrers to the intervening petition of the cotenant, Sanderson? His royalty deed was in terms identical with that delivered to the plaintiff, Malone, except that Sanderson claimed a one-twentieth interest. Sanderson, with one exception to be noted presently, was in the same general position as the plaintiff, Malone. His first offer to contribute likewise was not made until he filed his intervening petition in July of 1937, and laches and the statute of limitations have barred his claim as well as that of the plaintiff.

The intervenor, Sanderson, however, claims that he, R. H. Young, and others were together engaged in the business of purchasing royalty interests under an oral agreement. They were functioning under that agreement prior to the filing of the foreclosure action. Sanderson purchased his royalty interest from one Anderson. Sanderson pleads, in substance, that in conformity with the oral agreement he was to, and did, convey a certain interest in that royalty to R. H. Young, and that Young had orally agreed to protect his (Sanderson's) interest against encumbrances. The deed from Sanderson to Young was executed February 10, 1930. It nowhere contains any provision that as a part of the consideration for that deed, or as a consideration for Sanderson's efforts in the purchase of royalty interests for the group, Young agreed to protect Sanderson's interest against encumbrances. The deed does, however, contain a provision which, in effect, is inconsistent with the oral agreement claimed by Sanderson, in that it grants to Young the right to redeem for the mortgagors and to be subrogated to the rights of the mortgage holders, just as does exhibit "A." Let us pursue the effect of that provision. It meant that Young had the right to pay off the mortgages and, if he did so, he had the right to foreclose those mortgages and cut off Sanderson's rights unless Sanderson in turn protected his rights by paying the mortgage debt. Obviously, had Young elected to pay off the mortgages and to foreclose the same in his own name, Sanderson would not have been permitted to defend against the foreclosure of his interest on the ground that Young had orally agreed to protect his, Sanderson's, interests against the mortgage foreclosure. Moreover, assuming such oral agreement existed, if Young breached the alleged oral agreement, it was breached when he failed to pay the mortgage debt and permitted the land to be

sold on mortgage foreclosure on October 5, 1931. That was over five years and nine months before the intervenor filed his petition on August 11, 1937. Clearly Sanderson's action was barred. (G. S. 1935, 60-306, *Second.*)

In view of what has been said it will be unnecessary to discuss other contentions of plaintiff and intervenor. We have examined all authorities cited by them, but they do not require or support a conclusion contrary to that herein expressed. The order sustaining the demurrers of the various defendants is therefore affirmed.