Burgess v. Hixon.

---

T. J. BURGESS v. JOHN HIXON.

No. 14,879   (88 Pac. 1076.)

SYLLABUS BY THE COURT.

1. ESTOPPEL—*Conduct.*   Whenever a man with notice or means of knowledge of the facts and of his rights remains silent for a long period of time and abstains from impeaching a proceeding devesting him of the right to obtain the title to land, so that another man is induced to believe the proceeding has been acquiesced in as valid and acting upon such belief is induced to purchase the property and expend money in its improvement, the proceeding becomes unimpeachable in equity, whatever its original character may have been.

2. ———— *School-land Purchaser Estopped to Impeach Forfeiture Proceedings.*   The foregoing rule of equitable estoppel applied against a purchaser of school-land whose contract the state attempted to forfeit and who afterward sought to recover the land from a subsequent purchaser.

Error from Trego district court; JAMES H. REEDER, judge.   Opinion filed February 9, 1907.   Affirmed.

*Lee Monroe,* and *George A. Kline,* for plaintiff in error.

*John E. Hessin,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The action in the district court from which this proceeding in error arises was one of ejectment. The land in controversy was state school-land. On June 16, 1885, it was sold to Maurice Walton, and a certificate of purchase was duly issued to him. On December 14, 1893, the state attempted to forfeit Walton's contract. A notice of forfeiture was issued, which the sheriff served and returned. In the year 1903 the land was reappraised and sold to John Hixon, who entered into possession in January, 1904. In April, 1905, Walton quitclaimed his interest in the land to T. J. Burgess. Afterward Burgess made a tender to the county treasurer of the sums delinquent upon the Walton contract and of the taxes in arrears, which tender was refused. In August, 1905, Burgess sued Hixon for possession, and, as the result of a trial, was defeated.

If the plaintiff is entitled to recover it is because the sheriff's return on the notice of forfeiture fails to show that all the steps were taken which the statute enumerates as essential to a valid service.

The defendant claims that Walton and his assignee, the plaintiff, have acquiesced in the forfeiture proceedings, and are now estopped to impeach them even although they may be invalid. A general finding for the defendant brings to the support of the judgment all the evidence in the record favorable to his contention.

Walton paid no taxes after his purchase, and paid no instalments of his contract after April, 1889. His rights were, therefore, subject to forfeiture when the state initiated proceedings against him. All the steps prescribed by statute were in fact taken, although the

sheriff's return did not recite them.  The sheriff went all over the land and found it unoccupied.  Walton himself could not be found.  The notice of forfeiture was posted in a conspicuous place in the county clerk's office.  The record of the sale in the county clerk's office was stamped "forfeited," with the date, and the original notice was stamped in the same manner and preserved of record.

Of course Walton knew from the instant of his first default that his rights were subject to forfeiture.  He knew that upon his failure to pay it was the imperative duty of the county clerk to put into operation, and of the sheriff to carry out, forfeiture proceedings.  He was bound to anticipate and to expect that the law would be followed, and the record which was in fact made was ample to give him information that the state had undertaken to terminate his rights and that the officials having authority in the matter construed what was done to amount to a restoration of the land to the public domain.

At the date of the forfeiture proceedings the land was within the boundaries of a large ranch owned by Burgess.  From that time until July, 1899, a period of six years, it was used and rented to others by Burgess as if he owned it.  The possession of Burgess was not disturbed by any act of ownership on the part of Walton.  After 1893, as before, Walton paid no taxes and made no payments on his contract.  In July, 1899, the board of county commissioners executed to Burgess a lease of the land, as state school-land, for a period of four and one-half years.  Burgess had the use and enjoyment of the premises during that period, and a man named Hinkle, who, according to the defendant's testimony, was then in charge, paid the stipulated rent.  The lease was kept in the office of the county clerk as a part of his records.

On February 28, 1903, the land was sold to Hixon as leased school-land, and certificates of purchase therefor

were duly issued to him. Upon the expiration of the Burgess lease Hixon took possession and improved the property by fencing it.

These facts are sufficient to show that Walton, with means of information sufficient to lead him to the facts and to stir him to action, acquiesced in the forfeiture proceedings for nearly ten years, allowed the state to deal with the land as its own, both by leasing it and by selling it, and allowed a purchaser in the regular course of legal proceedings to expend money in acquiring the state's apparent title and in the improvement of the property.

Hixon testified that he had known the land since he was a boy, had lived in the neighborhood, knew the manner in which it was occupied and used, knew of the lease to Burgess, and in purchasing the land from the state purchased it as leased school-land. There can be no question, therefore, but that Hixon's conduct was induced by the failure of Walton to complain of the forfeiture and by the show of full dominion which Walton negligently, if not wilfully, permitted the state to make.

Under these circumstances the estoppel against Walton is complete, and there are additional reasons why it should be effective against Burgess. The visible fact was that the land was included within the fences of the Burgess ranch. For six years Burgess apparently excluded Walton from access to it. Then Burgess leased it and occupied it as a tenant of the state for four and one-half years. He had actual knowledge of facts concerning which notice could only be imputed to Walton through their publicity and their relation to possession. Burgess actually furnished the material with which to build up the estoppel against Walton.

Like Walton, Burgess suffered Hixon to buy the land, make a payment upon it, take possession, and spend money in its improvement; and the evidence shows that for a nominal consideration only he took a quit-claim deed from Walton, which recites that Walton is

Burgess v. Hixon.

"of Portland, in the county of Multnomah, and state of Oregon."

Doubtless cases may be found in the wavering course of the development of the law of equitable estoppel which would allow Burgess to oust Hixon from this land, but there is none which would satisfy the conscience of any court committed to the righteous doctrine that whenever a man with notice or means of knowledge of the facts and of his rights remains silent for a long period of time and abstains from impeaching a proceeding devesting him of rights respecting property, so that another man is induced to believe it has been acquiesced in as valid and acting upon such belief is induced to purchase the property and expend money in its improvement, the proceeding becomes unimpeachable in equity, whatever its original character may have been. It would be superfluous to append a list of authorities in support of a principle of such manifest justice, based as it is upon the broad foundation of common honesty, common decency, and fair dealing.

The plaintiff says that "presumably" he was in possession under Walton. The court is under no obligation to presume a fact which, if it exists, is peculiarly within the plaintiff's knowledge and power to prove. Not having been established by evidence, for all purposes of the case the fact does not exist. Besides, from July, 1899, such a presumption would run counter to Burgess's lease from the state as owner.

The plaintiff argues that proof of conduct on the part of the sheriff in serving the forfeiture notice other than that shown by his return was improper. This would be true if the defense were based upon the claim of a forfeiture valid in fact under the statute, but such is not the case. It is sufficient for the defendant that various steps were taken by the state in an effort in good faith to forfeit, which, with the means and opportunity of full knowledge at hand, the plaintiff has accepted as effectual and has induced the defendant to

act upon as effectual. Even if it were technically invalid Walton could acquiesce in whatever the officers did as if it were valid, and if he did so and led others to do so he cannot afterward turn against them. Therefore the defendant had the right to show everything the sheriff did, whether noted on the return or not. The evidence that no one was in possession, that Walton could not be found, and that notice was properly posted, established the most important factors of the state's 'attempt to terminate Walton's rights. The posted notice was also a means of information of what had been undertaken, and all the facts enumerated furnished the starting-point for the proof of acquiescence.

From what has been said, it is clear that this case is entirely different from any of the so-called schoolland cases recently decided. Here rival claimants of the land are contending with each other, and whatever his strict legal rights once may have been the original purchaser cannot recover if his own conduct has been such that his success would in effect work a fraud upon the subsequent purchaser.

In *Spencer v. Smith,* 74 Kan. 142, 85 Pac. 573, and in similar cases, the original purchaser desired to put himself in position to litigate with the subsequent purchaser. He sought to compel the county treasurer to accept the arrears on the contract and delinquent taxes. The treasurer answered that his rights had been forfeited. The issue tendered was whether the forfeiture proceeding was valid, and the determination of that issue depended upon whether or not the sheriff had served the forfeiture notice according to law. The court held that the treasurer had no right to raise such an issue; but, passing to the merits, it further held that it was bound by the record and could look to nothing outside the sheriff's return. So far, therefore, as the treasurer was concerned, he was bound to accept the tender.

In this case the defendant admits that the record

shows the forfeiture proceeding to have been irregular, but he claims the original purchaser is estopped to assert its irregularity.

In the Spencer-Smith case the treasurer answered further that the original purchaser had lost title to the land in controversy by abandonment. The court held that it did not lie with the treasurer to make such a plea, but if it did the plea was unsound.

In this case it is not held that Walton has lost his title by abandonment. It is held that he has chosen to treat as valid proceedings which otherwise could not have bound him; that he has induced the defendant to believe and to act upon the belief that he is bound; and that it would be unconscionable to permit him to change his attitude now and overthrow rights which have been built up at the instigation and under influence of his own deceptive conduct.

The act of 1901 (Laws 1901, ch. 350; Gen. Stat. 1901, §§ 6339, 6357) under which the sale to Hixon was made is not open to the constitutional objection urged against it. The act of 1864 (Laws 1864, ch. 102), submitted to and approved by the people, contained an express provision for amendment by subsequent legislation.

The judgment of the district court is affirmed.