No. 37,931

CHARLIE MAUNE and EDITH M. MAUNE, *Appellants,* v. LANDOWNERS OIL ASSOCIATION, a Corporation; SINCLAIR PRAIRIE OIL COMPANY, a Corporation, and THE NATIONAL COOPERATIVE REFINING ASSOCIATION, *Appellees.*

(223 P. 2d 1001)

Opinion filed November 10, 1950.

*Mark H. Adams,* of Wichita, argued the cause, and *Russell Moore, William I. Robinson, J. Ashford Manka* and *Addison I. West,* all of Wichita, were with him on the briefs for the appellants.

*E. H. Hatcher,* of Topeka, argued the cause, *William F. Pielsticker,* of Wichita, *Ralph W. Garrett* and *Cecil R. Buckles,* both of Tulsa, Okla., *William Easton Hutchison, C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to set aside an instrument called an "Oil and Gas Conveyance" and to quiet title to real estate. Defendants' demurrer to the plaintiffs' second amended petition was sustained. Plaintiffs have appealed.

After the formal allegations, the second amended petition alleged that on January 24, 1933, plaintiffs owned in fee simple a described quarter section and on that date executed an instrument designated "Oil and Gas Conveyance"; that it was attached to the petition as Exhibit "A"; that the Landowners Oil Association attempted to transfer certain of the rights claimed by it under Exhibit "A" and such rights were claimed by The Sinclair Prairie Oil Company and National Coöperative Refinery Association and those two companies claimed some interest in the land.

The amended petition then alleged that the instrument was void for want of consideration because it was indefinite, unconscionable and grossly unfair to plaintiffs and they were entitled to have it set aside and their title quieted.

The amended petition then alleged the instrument purported to lease all oil and mineral rights in the land, creating a seven-eighths working interest, and in addition purported to assign a one-eighth royalty, and as a result of conveyances by Landowners and its assigns all executed without notice or consideration to plaintiffs the seven-eighths, the working interest was claimed, one-half by Sinclair Prairie and one-half by the National Coöperative and one-eighth royalty by Landowners and Sinclair Prairie, the claimed interest in the oil and gas accruing was being retained by Landowners, Sinclair Prairie and the National Coöperative without right.

The amended petition then alleged that the land described was located within a producing oil pool and a map showing pro-

ducing wells and dry holes was attached; that three producing wells were shown offsetting plaintiffs' land. The date of the completion of these wells was pleaded.

The petition then alleged that after the completion of these wells Landowners delivered to the Black-Marshall Oil Company a purported oil and gas lease covering the land in question, reserving to Landowners Oil one-eighth of the oil produced, and at the time this lease was executed the Black-Marshall Oil Company owned or controlled all of the stock of the Landowners Oil and notwithstanding the fact that drilling and completion of these producing wells had caused the leasehold interests to become valuable there was no consideration or notice to the plaintiffs of such leasing and no consideration to Landowners for the granting of that lease.

The amended petition next alleged the lease granted to Black-Marshall purported to cover the entire leasehold interest in the property. If valid, it was a half interest lease because Landowners Oil had transferred an undivided one-half of the working interest it claimed under Exhibit "A" and this was owned by defendant, Sinclair Prairie; that thereafter Black-Marshall and Sinclair Prairie commenced drilling on plaintiffs' land on August 30, 1944, and the well was completed on November 1, 1944, and thereafter Black-Marshall assigned its interest in the leasehold to the defendant, the National Coöperative; that the defendants, Sinclair Prairie and Black-Marshall, and the defendant, the National Cooperative, had without any right produced oil and gas from the premises of the plaintiffs and sold it for large sums of money, the amount of which plaintiffs did not know; that each of the defendants was aware of all of the parts set out in the petition at the time the interests were acquired. Plaintiffs then stated that if the accounting of the oil and gas operations by the defendants disclosed that defendants had not recovered from the sale of such oil and gas the reasonable cost of such operation, the plaintiffs were able and offered to pay the defendants the amount of such deficiency.

The prayer of the petition was that Exhibit "A" be canceled; that plaintiffs' title to the land be quieted against Landowners and the Sinclair Prairie insofar as they claimed to own one-eighth royalty; that Landowners and Sinclair Prairie be required to account to plaintiffs for the oil and gas produced from the

land and that plaintiffs' title be quieted against all of the defendants and they be forever barred from any interest in the land; that the defendants claiming to own the operating one-eighth working interest be required to account to the plaintiffs for the oil and gas produced from the land and their expenses in connection therewith and if such proceeds were in excess of the reasonable cost of such development that plaintiffs have judgment against defendants for the amount of such excess.

Exhibit "A," to which reference has been made, was attached to the amended petition. It provided that for a consideration of one dollar and of the agreements contained therein plaintiffs leased to the Landowners the land in question for a term of twenty years or as long as oil or gas should be produced. It recited as a consideration the grantee agreed to place the land in an acreage pool, known as Pool 1, to consist of at least 25,000 acres and not to exceed 500,000 acres; that the privilege of assigning the whole or any part of the estate was expressly allowed to the grantee, and that should the grantee drill or mine the premises and produce oil it should deliver to the collective credit of the members of the pool one-eighth of all oil produced or at the grantee's option it should pay to the credit of the members of the pool one-eighth of the market value of gas produced; that all the oil or royalty should be the collective property of all the members of the acreage pool and the money should be deposited to the credit of a trustee; that the grantee in consideration of the formation and management of the pools should after the trustee expenses had been paid receive twenty-five percent of all income; that the trustee should not less than quarterly make distribution of the money held by him as trustee; that there should first be deducted and paid to the members of the pool seventy-five percent of the money held by the trustee and each member of the pool should be entitled to share in the proportion that the number of acres he had conveyed to the pool bore to the actual number of acres comprising such pool; that the trustee should next pay to the grantee twenty-five percent of the moneys available for distribution in payment of its services, from which payment the Landowners should pay all the banking and trusteeship expenses.

The grantor acknowledged in the instrument that Pool No. 1 had at the time of its execution consisted of more than 25,000 acres

assembled by the grantee in accordance with its terms. Other provisions of the instrument do not concern us now.

The defendants demurred to this petition on the ground that it did not state facts sufficient to constitute a cause of action. On March 18, 1949, this demurrer was overruled.

At that time the last pronouncement of the law with reference to this particular conveyance was the opinion in *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 183 P. 2d 947. It was filed August 12, 1947. There we held that under the particular facts pleaded the demurrer to the petition of plaintiffs in that case, the same parties who are defendants here, should have been sustained. The subject matter of that action was a conveyance substantially similar to that pleaded here.

The cause was remanded to the district court, where the plaintiffs proceeded to file an amended petition. The plaintiffs by their amendments attempted to cure the defects and to supply the deficiencies in their original petition. We held on appeal that they had done so and that their petition stated a cause of action so that the demurrer to their petition was correctly overruled. (See *Sinclair Prairie Oil Co. v. Worcester,* 167 Kan. 194, 205 P. 2d 942.) This opinion was filed on May 7, 1949, about two months after the defendants' demurrer was overruled in the case we are now considering.

The time within which to plead had been extended by agreement of the parties. On September 8, 1949, the defendants filed a motion in which they asked permission to refile their demurrer and that they be given permission to reargue it. In this motion they referred to our opinion in *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 183 P. 2d 947, and also to the later opinion in the same case in 167 Kan. 194, and alleged that the later opinion had reversed the holding in the earlier appeal, and the law relating to the contract in question had changed since the earlier appeal. The trial court heard this motion and sustained the motion to permit defendants to reargue the demurrer and on the hearing sustained defendants' demurrer. Hence this appeal.

The plaintiffs argue first, the trial court should not have sustained the demurrer because the contract in question was so unconscionable and grossly unfair to plaintiffs that the courts will not enforce it and was so indefinite and uncertain in its terms that the minds of the parties to it never met. In connection with this

argument, they refer to the motion to reargue the demurrer filed by defendants and contend that by this motion defendants brought the entire record in each of these appeals into this appeal. On account of the conclusion we have reached in this appeal it will not be necessary for us to decide that question. It is certain, however, that the opinions in those two cases are proper to be considered by us on this appeal.

At the outset, plaintiffs concede that they must get rid of the effect of former opinions of this court, where conveyances with substantially like provisions were considered. These are—*Moos v. Landowners Oil Ass'n*, 136 Kan. 424, 15 P. 2d 1073; *Eichman v. Landowners Oil Ass'n*, 153 Kan. 791, 113 P. 2d 1056; *Sinclair Prairie Oil Co. v. Worcester*, first appeal, 163 Kan. 540, 183 P. 2d 947; and *Sinclair Prairie Oil Co., v. Worcester*, second appeal, 167 Kan. 194, 205 P. 2d 942.

The Moos case was the first of these. It was brought by plaintiff sometime prior to 1932 to set aside a royalty conveyance to one of the defendants. A copy of the conveyance is printed following the opinion in 136 Kan. at page 433. The petition alleged that the conveyance was procured by false and fraudulent representation; that the grantee had not secured a blue sky permit; that it was obnoxious to public policy and unfair and unconscionable. The trial court found the conveyance to be unconscionable and void per se and void for the further reason of no blue sky permit. This court made a somewhat lengthy statement of the manner in which an oil pool is carried on and declined to hold that the contract in and of itself was so fraudulent and uncertain that it should be set aside.

The contract was again before us in *Westhusin v. Landowners Oil Ass'n*, 143 Kan. 404, 55 P. 2d 406. That action was brought by the owner of land to set aside a conveyance which leased the land for oil and gas, reserving one-eighth royalty. The plaintiff sought to set the conveyance aside on the ground that the oil association had not obtained a blue sky permit. The trial court set aside the conveyance and on appeal we held the failure to comply with the blue sky law did not render the conveyance void, but voidable only. The plaintiff argued on appeal that the conveyance was void on account of being unconscionable. In dealing with that argument we pointed out that the question had not been raised in the trial court and said if it had been the Moos case would have been pertinent.

Through the years the Landowners operated two different pools. The conveyance in the Moos case and in the Westhusin case referred to Pool "A"— that in the other cases to Pool 1.

The next case to come before us was *Eichman v. Landowners Oil Ass'n*, 153 Kan. 791, 113 P. 2d 1056. The conveyance in that case conveyed all the oil, gas and other mineral rights under a half section of land. The sole consideration was that the land was to be put in Pool 1. The conveyance was executed on July 2, 1928. The action was commenced in the late 30's and we passed on the appeal on June 7, 1940. The owners of the land sought to have the conveyance set aside because it was void on its face as being unfair and unconscoinable and because as the pool was operated the transaction was so unfair as to be void as being unconscionable. An argument was made somewhat analogous to that made here, that Landowners had paid the plaintiffs only $209.67 from the date of the conveyance until the action was filed, and had collected $1,600 during that time from delay rentals on plaintiff's land. We remarked that plaintiff attempted to distinguish that case from the transaction in the Moos case by pointing out that the transaction being considered involved all the oil, gas and mineral rights of the plaintiff, while in the Moos case only the royalty interest was involved. We said:

"We fail to discern how a larger participation in the pool with provision for the same proportionate returns is more objectionable than a lesser one. If the investment itself is not unconscionable, and we have held that it is not, then the amount of participation cannot make it so."

The next opinion having to do with this contract was *Sinclair Prairie Oil Co. v. Worcester*, 163 Kan. 540, 183 P. 2d 947. That opinion was filed on August 12, 1947. In the transaction involved in Pool 1 the Sinclair Prairie Oil Company and the Landowners Oil Association were plaintiffs. As the action was framed it was brought against the Worcesters, the Federal Land Bank of Wichita, and the Federal Farm Mortgage Corporation. The relief sought was to set aside a tax deed, declare mortgages to be invalid as against the mineral interests of plaintiffs and to quiet the title of plaintiffs to certain mineral interests. The mineral interests of plaintiffs were represented by a conveyance substantially identical with that considered in the Moos case, except that the pool in which the land was to be placed was Pool 1 rather than Pool "A." The defendants' demurrer to plaintiff's petition · had been overruled

and we reversed the lower court and ordered it sustained. In reaching this result, we held that under the allegations of the petition there was no consideration moving to the defendants because there was no allegation that the land was ever placed in any pool; there was no provision for issuing any certificate to the owner of the land that his land was in a pool and if Landowners ever placed the land in any pool it did so for its own benefit and it would constitute no benefit moving to the grantor. We further pointed out that the conveyance was so indefinite that should the judgment overruling the demurrer stand, litigation was almost sure to follow in order to particularize the specific rights claimed by the plaintiffs. This was the first occasion in all the litigation involving this contract where we had held this conveyance bad. The case was remanded to the district court, where an amended petition was filed. The demurrer of defendants to it was overruled and the defendants appealed. The opinion was filed on May 7, 1949. (See *Sinclair Prairie Oil Co. v. Worcester,* 167 Kan. 194, 205 P. 2d 942.)

In the amended petition the plaintiffs alleged that they had placed the land in a pool and had so advised the owners of the land by letter; the opinion pointed out that the petition then alleged certain activities of Landowners in endeavoring to get production on the land, and alleged the amount of money so expended; the petition then alleged payment to the owners of the land from 1935 to 1941, amounting to $427.37.

We, in our opinion, pointed out that the owners of the land argued that their demurrer should have been sustained because the minds of the parties never met and held that the amended petition alleged facts from which it could be inferred that the minds of the parties did meet. We also dealt with the argument that the conveyance was so unfair as to be unconscionable and held the argument not to be good under the allegations of the amended petition. The syllabus was as follows:

"In an action to set aside tax deeds and to quiet the title of plaintiffs to oil and gas interests, it appears this action was here once before. (See *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 183 P. 2d 947.) In that case a judgment overruling the demurrer to the petition was reversed. The plaintiffs filed an amended petition in the trial court and this appeal is from an order overruling defendants' demurrer to it. Held: (a) the present petition does not depart from the theory upon which the first petition was drawn; (b) the present petition does not attempt to relitigate matters that were decided in

the first opinion; (c) under the pleadings of the amended petition the minds of the parties met in the execution of Exhibits "A" and "B"; (d) under the allegations of the petition the parties carried on transactions' pursuant to Exhibit "B"; (e) the minds of the parties met in the execution of Exhibits "A" and "B"; (f) Exhibits "A" and "B" were not so advantageous to the grantee as to be unconscionable; (g) there was sufficient consideration moving from grantee to the grantor to uphold Exhibits "A" and "B"; (h) Exhibits' "A" and "B" are not gambling contracts so as to prevent their being enforced; (i) the trial court did not err in refusing to strike from the amended petition a paragraph pleading the fourteenth amendment as a defense."

Confronted with this history of litigation involving conveyances substantially identical with the one we are considering, the plaintiffs seek to distinguish this from the Moos case, first, by pointing out that it involved the sale of royalty only, while this case involves the sale of the entire mineral rights. We dealt with that argument in the Eichman case by the statement already quoted in this opinion. In attempting further to distinguish the Moos case from this, the plaintiffs actually reargue the Moos case and ask us to reach a different conclusion as to it. We are unable to do that.

In a further effort to distinguish this case from the Moos case, plaintiffs point out that the conveyance in this case and in the Eichman case contained three paragraphs having to do with the manner in which the owner of the land was to be reimbursed. They characterize these paragraphs as vicious and argue they render the conveyances so unfair as to be unenforceable. The trouble with that argument is that the conveyance in the Worcester case contained the same provisions, the argument was considered in the second Worcester opinion and held not to be good. This argument in effect asks us to reverse our holding in that case. We do not care to do that.

The plaintiffs next point out some figures quoted in the second Worcester opinion and by a comparison of dates argue that Landowners paid plaintiffs in this action only $19.61 dividends from the time the conveyance was executed on January 24, 1933, to the time the action was filed. They point out the allegation in their petition that the land involved produced prior to December 3, 1948, nearly 100,000 barrels of oil. They argue that had the land been under an ordinary lease with an one-eighth royalty going to plaintiffs, they would have received during that time between $25,000 and $30,000. They argue that such a disparity between what

plaintiffs received under this conveyance and what they should have received renders the conveyance so fraudulent that it should be set aside. This argument brings us to a consideration of another question. It has to do with the duty of plaintiffs to bring their action with reasonable promptness. While the outcome of the appeal did not turn on this point we mentioned it in *Westhusin v. Landowners Oil Ass'n,* supra. There we said:

"It will be recalled the Collins royalty conveyance to defendant was made in January, 1929, and plaintiffs purchased the land of Collins in April, 1929. The Collins royalty conveyance to defendant was on record, and was referred to in the deed from Collins to plaintiffs.

"The Collins royalty conveyance to defendant recited that the pool in which his royalty was placed consisted of more than 10,000 acres of oil and other mineral royalty rights assembled by defendants, and placed in "Pool A" within six months of the first conveyance. One stipulation of fact was that about the date of the Collins royalty deed defendant entered into a number of other similar transactions in Rooks county and in a number of other counties in the state of Kansas. Collins received one small dividend from operation of the pool. Thereafter plaintiffs received from defendant small dividends as follows: One in June, 1929; two in September, 1929; one in December, 1929; two in March, 1930; one in June, 1930; two in September, 1930; one in December, 1930; one in March, 1931; one in June, 1931; one in December, 1931; one in September, 1932; one in December, 1932; one in December, 1933.

"Plaintiffs did not commence their action until January 22, 1934. Assuming plaintiffs were originally privileged to avoid the royalty conveyance, they were required to act with reasonable promptness and decisiveness. They could not affirm for a while and then disaffirm Operation of the pool affected property and financial interests of many persons, and plaintiffs could not experiment regarding the advantages to them of membership in the pool for more than four years, and then successfully apply to a court of equity to take them out."

The petition shows the conveyance was executed on January 24, 1933. Certain offset wells on land adjoining plaintiffs' land were drilled beginning in January, 1938; again in July, 1939, and again in March, 1944. A sublessee of Landowners entered plaintiffs' land on August 20, 1944, and commenced the drilling of an oil well on plaintiffs' land.

The action was not commenced by the plaintiffs until on June 11, 1948. That would be approximately ten years after the first offset well was drilled, which showed a likelihood of oil being produced from plaintiffs' land and the filing of the action. It shows approximately four years elapsed from the time the first producing well was drilled on plaintiffs' land until the action was brought.

The conclusion is inescapable that under the allegations of the petition the plaintiffs stood by for ten years after the first offset well was drilled and for four years after the first producing well was drilled and took no action while during that time the 100,000 barrels of oil, of which the petition speaks, was being taken from under their land.

This is an equity case, that is, the plaintiffs ask that the conveyance be set aside and that an accounting be had. We treated a problem similar to that in *Burgess v. Hixon,* 75 Kan. 201, 88 Pac. 1076. There we held:

"Whenever a man with notice or means of knowledge of the facts and of his rights remains silent for a long period of time and abstains from impeaching a proceeding divesting him of the right to obtain the title to land, so that another man is induced to believe the proceeding has been acquiesced in as valid and acting upon such belief is induced to purchase the property and expend money in its improvement, the proceeding becomes unimpeachable in equity, whatever its original character may have been."

A case more nearly analogous, moreover, is that of *Malone v. Young,* 148 Kan. 250, 81 P. 2d 23. This was a case where a cotenant of oil and gas in place sought to enforce his rights against his cotenant. We pointed out that the plaintiffs had waited five years and nine months after they could have brought their action asking to be allowed to contribute, and to have their rights adjudicated before they brought it. We held that what constituted reasonable time within which to bring an action depended upon the facts and circumstances of each case but that even though the plaintiffs in that action had alleged that they had not known of the value of the land for oil purposes, still they had waited too long. We said:

"The doctrine that a person claiming an interest or a right may be required to assert it promptly is especially applicable to oil and gas properties which are subject to rapid fluctuation in value. That he will not be permitted to engage in speculative delay until the value of such property has greatly appreciated, is definitely established."

In this action plaintiffs do not allege that they did not know about the drilling of the offset wells and later of the drilling of the producing wells. The wells were being drilled in plain view and plaintiffs by the exercise of ordinary diligence would have learned of the value of their land. The idea behind pooling contracts such as this is that a landowner with unexplored land gets the benefit of the likelihood that oil will be discovered on some of the

land in the pool. He thereby spreads the risk over many acres and at the same time reduces the amount of his return. The reasons pleaded by plaintiffs why this conveyance should be set aside were just as good on the day the first offsetting well was drilled as on the day this action was begun. Evidently plaintiffs deemed it wise to stand by and permit the oil company defendants to spend their money drilling. Then after the lease was proved to be of value they brought this action to set aside the conveyance and for an accounting. To permit them to do this would be inequitable. (See *Commissioners of Morris Co. v. Hinchman,* 31 Kan. 729, 3 Pac. 504; also *Kirsch v. City of Abilene,* 120 Kan. 749, 244 Pac. 1054.) (See, also, *Preston v. Shields,* 159 Kan. 575, 156 P. 2d 543, and cases cited therein.)

Plaintiffs seek to avoid the force of this argument by arguing that the conveyance was intrinsically fraudulent and void and conferred on defendants no rights whatever in their land. We have already demonstrated in this opinion that the conveyance was not intrinsically void.

Plaintiffs next argue that the trial court erred in sustaining defendants' demurrer for the reason that the petition pleaded facts which brought the case squarely within our holding in *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 183 P. 2d 947. We have already demonstrated that argument is not good.

Plaintiffs next argue that the trial court erred in granting defendants' motion to reargue their demurrer after the time had expired within which such defendants might have perfected an appeal from the trial court's order overruling their demurrer. The facts as to this have already been set out in this opinion. It is conceded that time had been extended for defendants to answer. Matters of this sort are addressed to the sound discretion of the trial court. We cannot say the court abused its discretion by permitting the demurrer to be reargued.

The judgment of the trial court is affirmed.

SMITH, J. (dissenting): I dissent, but will add nothing to what was said in the dissenting opinion of Mr. Justice Arn in *Sinclair Prairie Oil Co v. Worcester,* 167 Kan. 194, 205 P. 2d 942.

HARVEY, C. J., and WERTZ, J., dissent.