No. 38,627

MAUDE MEYER, CECIL R. MEYER, a minor, by Maude Meyer, his guardian, ELLA MEYER MURPHY, HERMAN E. MEYER, WILLIAM H. MEYER, ARLENE YOUNG, HENRY MEYER, JR., and NORMA JEAN SMITH, *Appellants,* v. SINCLAIR PRAIRIE OIL COMPANY, a corporation, and LANDOWNERS OIL ASSOCIATION, a corporation, *Appellees.*

(246 P. 2d 245)

Opinion filed July 3, 1952.

*Russell Moore,* of Wichita, argued the cause and *Benjamin F. Hegler,* of Wichita, and *Frank R. Collins,* of Ulysses, were with him on the briefs for the appellants.

*E. H. Hatcher,* of Topeka, argued the cause, and *Ralph W. Garrett* and *Cecil R. Buckles,* both of Tulsa, Okla., for Sinclair Oil & Gas Company, and *William F. Pielsticker,* of Wichita, for Landowners Oil Association, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to quiet title to real estate. Defendants' demurrer to plaintiffs' second amended reply was sustained. Judgment was entered for them on the pleadings. Plaintiffs have appealed.

The action has to do with written instruments identical with those dealt with by us in *Eichman v. Landowners Oil Ass'n,* 153

Kan. 791, 113 P. 2d 1056; *Moos v. Landowners Oil Ass'n*, 136 Kan. 424, 15 P. 2d 1073; *Sinclair Prairie Oil Co. v. Worcester*, 163 Kan. 540, 183 P. 2d 947; *Sinclair Prairie Oil Co. v. Worcester*, 167 Kan. 194, 205 P. 2d 942; and *Maune v. Landowners Oil Ass'n*, 170 Kan. 18, 223 P. 2d 1001. The provisions of these documents have been delineated so many times in our reports we do not deem it necessary that they be set out again in detail.

The petition was filed on January 10, 1948. It stated that Maude Meyer was the guardian of plaintiff, Cecil Meyer, deceased, and that plaintiffs were the owners and in possession of the land in question; that defendants claimed some right, title or interest in it; that these claims were a cloud on plaintiffs' title; and asked to have their title quieted.

The defendants filed on March 22, 1948, first a general denial. They then alleged they owned rights in the land by reason of an instrument dated August 21, 1928, executed by Henry Meyer and Maude Meyer, his wife, and duly recorded, and another instrument dated June 10, 1931, executed by the same parties (these two instruments are referred to throughout the record as Exhibits "A" and "B"); that by virtue of these two instruments Landowners acquired the exclusive right to prospect, explore and remove all petroleum products, subject to the obligation to deliver to the collective members of Pool 1 as royalty one-eighth of all gas and oil produced or to place it to the credit of the pool members the equivalent in money; that these rights were so acquired for the term of twenty years from the date of the first instrument or August 21, 1928, and likewise for a term of twenty years from the date of the second instrument or June 10, 1931; that Landowners still possessed subject only to one-half of such portion as was sold and assigned by it to Sinclair Prairie Oil Company, the proceeds of which sale had been paid to the trustee for the benefit of the members of the royalty pool.

The answer further alleged various transactions between Landowners and Sinclair Prairie by which that company became the owner of one-half the interest granted Landowners in Exhibits "A" and "B" and further the payment of dividends to the Meyers, the sending of various letters to Pool 1 members and certain performances on the part of Landowners substantially as pleaded by the plaintiffs in *Sinclair Prairie Oil Co. v. Worcester*, supra. These allegations were fully set out in that opinion and will not be repeated here.

The prayer of the answer was that plaintiffs take nothing. Copies of all the instruments and letters to which reference was made in the answer were attached as exhibits.

For the benefit of the student of this opinion we shall now interpolate some pertinent dates. The petition was filed and the action thereby began on January 10, 1948; the answer was filed on March 22, 1948; on November 10, 1948, a reply was filed, which was a simple, general denial of all the allegationss of the answer.

On February 7, 1951, approximately twenty-six months after the first reply was filed, and about thirty-five months after the answer was filed, plaintiffs sought for and were granted permission to file an amended reply. This amended reply was filed on that same date. In this amended reply plaintiffs pleaded for the first time that the Meyers were induced to execute Exhibits "A" and "B" by fraud. A substituted amended reply was filed on February 26, 1951. Motions to strike portions of this amended reply were overruled and motions to order plaintiffs to make it more definite and certain were sustained.

Plaintiffs on April 13, 1951, filed a second amended reply. That is the reply which is at issue in this appeal. It was first a general denial. It admitted that Henry Meyer and Maude, his wife, executed the instruments pleaded; that Henry died on August 28, 1942; that Maude was his widow; and the other plaintiffs were their children.

The reply then alleged each one of the instruments was fraudulent on its face and Henry and Maude were induced to sign them by fraud; that representatives of Landowners represented to them that by signing the contract in question all the mineral rights, both royalty interest and the seven-eighths working interest, would become a part of Pool 1; that similar representations were made to many others who signed similar agreements; a copy of a pamphlet used to make these representations was attached and several statements made in the pamphlet were set out; that by reason of the foregoing representations plaintiffs were led to believe they were giving Landowners the right to execute oil and gas leases on their land for the benefit of pool members and if any of the leases were sold the consideration received would be placed in the pool.

The reply then alleged that in every instance where a lease became valuable Landowners conveyed their interest to Black-Marshall Company, which was the principal stockholder of Landowners,

and received no consideration; that these transactions were set out in defendants' answer but were concealed from plaintiffs until about September 1, 1949; that there was nothing about these transactions to arouse the suspicion of plaintiffs until they learned that Black-Marshall owned all the stock of Landowners; that plaintiffs did not learn that Black-Marshall participated in these transactions as lessee until the last two years before the filing of the reply; that Black-Marshall was in the hands of a receiver; that at the time of the execution of the contracts Landowners represented to the Meyers that it would receive as its entire consideration for the formation and management of the pool twenty-five percent of all income of the pool, which statements were relied on by them; that at the time of the execution of the Meyers of Exhibit "B" Landowners reported to the Meyers the sale of the leasehold and royalty rights to contract and told them that the entire proceeds of the sale had been paid over to the trustee for the pool; that Henry Meyer was a farmer without much business experience and he relied on the above representations; that these representations were fraudulent and made as an inducement to secure the signing of the contracts; that notwithstanding the above representations the contracts contained language which was susceptible of the construction that Landowners might have all the privileges of a lessee under an ordinary form of oil and gas lease for its own use and benefit and defendants were so interpreting the contracts; that defendants did not advise Meyers of the effect to be given the contracts and if they had been so advised they would not have signed; that plaintiffs had consulted several lawyers, naming them, and were told the contracts had been held valid and could be enforced; that they did (not) discover the fraud that had been practiced upon them until within two years before the filing of the reply; that at various times when the Meyers signed agreements or receipts or received letters or dividends from the defendants they were unaware of the fraud that had been practiced; that during all the time that Exhibits "A" and "B" had been in effect the land in question had value for delay rentals in the amount of not less than one dollar per acre per year; that by reason of the contracts in question plaintiffs had been prevented from leasing their land and thereby receiving $1,280 per year; that there had been no development for oil or gas on plaintiffs' land and Exhibit "A" had expired by its own terms; that Central was an affiliate of Sinclair Prairie and one Connelly was president of both Central and Sinclair Prairie

and, therefore, Sinclair was not an innocent purchaser; that plaintiffs did not learn defendants' claimed ownership in their own right and not as trustee for benefit of the pool members until the defendants inserted such claims in a reply to a motion for rehearing in *Maune v. Landowners Oil Ass'n,* supra, which was filed soon after December, 1950. Several excerpts for that reply are then set out in the reply.

The reply then alleged that Sinclair Prairie purchased its interest in the mineral rights with full knowledge of all the facts set out in the reply; that at the time Sinclair Prairie purchased the property it obtained abstracts of title to the land in question and copies of the contracts in which it purchased an interest and ascertained from inquiry at the state corporation commission the representations Landowners had made to it; that at the time of the transactions Sinclair Prairie knew that all the stock of Landowners was owned by Black-Marshall.

Judgment was prayed as in the petition.

The defendants jointly and severally demurred to this second amended reply, first on the ground that it did not state facts sufficient to constitute a cause of action or a defense in favor of the plaintiffs and against the defendants or either of them; second, that it showed on its face affirmatively that plaintiffs were not entitled to the relief sought; third, that it showed on its face that the plaintiffs, and each of them, were guilty of laches, an acquiescence and estoppel to claim relief sought.

Plaintiffs elected to stand on the amended reply.

This demurrer was sustained. Defendants thereupon filed a motion for judgment for the reason that the petition and reply were insufficient to constitute a cause of action in favor of the plaintiffs against the defendants, or either of them, and they were not entitled to recover in the action. This motion was sustained. Hence this appeal. It is stipulated in the record that a gas well, which is not producing was begun by an assignee of defendants before June 10, 1951.

The specifications of error are that the trial court erred in sustaining the defendants' demurrer to the amended reply and in sustaining their motion for judgment, and in rendering judgment in favor of defendants and against plaintiffs.

It will be noted the plaintiffs have alleged in their reply that at the time they executed Exhibits "A" and "B" it was represented to Mr.

and Mrs. Meyer by the agents of Landowners that by these contracts all the rights granted Landowners were to be the sole property of the members of the pool and that it now appears the terms of these contracts were such that the grantee was entitled to seven-eighths working interest. As appears from this record, any representations made by agents of Landowners to Mr. and Mrs. Meyer were made prior to August 21, 1928, as to Exhibit "A" and prior to June 10, 1931, as to Exhibit "B." Unless the statute of limitations was tolled for some reason the cause of action plaintiffs attempted to plead in their amended reply is barred.

We pass by arguments of defendants that the instruments themselves were so plain and unambiguous that Mr. and Mrs. Meyer were charged with knowledge of this provision and cannot be now heard to say they had no knowledge of what they were.

The answer of defendants setting out the entire course of dealing between Mr. and Mrs. Meyer and Landowners was filed on March 22, 1948. This answer was a clear statement of what Landowners claimed to be the provisions of Exhibits "A" and "B" and the interpretation they claimed should be put on it. The amended reply of plaintiffs was filed on March 17, 1951. This was the first time plaintiffs pleaded fraud and was filed more than two years after the filing of the answer. Plaintiffs plead nothing in their reply, which they could not have learned from reading defendants' answer. In *Hinderliter v. Bell*, 114 Kan. 857, 221 Pac. 252, we dealt with a deed which was regular on its face and remarked that such a deed did not impart notice of matters outside it. We said further:

"However, the plaintiff had more than the knowledge imparted by the public records. In executing and acknowledging the execution of the instrument she had an opportunity to learn the character of the instrument and that it operated as a transfer of her interest in the land. In the petition it is stated that a copy of the contract was sent to her after the execution thereof. This she had in her possession for more than four years, and in it was the plain statement that she had on that day conveyed all her interest, right and title to the land, describing it. It also contained a full statement of the consideration for the conveyance, reciting the monthly allowances the grantees were to pay to her, the furnishing to her in sickness of medical attendance with the care of a competent nurse. This agreement not only gave her notice of the execution of the deed and the transfer, but also of the conditions that the grantees were to perform in consideration of the transfer. It furnished her knowledge of the fact, too, that the conditions to be written into the contract, namely, that the land should stand as security for performance and that an addition to the house for her use was to be erected, and also that provision was to be made for her if she chose to move to town, were not included in it."

See, also, *Dorsey v. Protection State Bank,* 143, Kan. 398, 54 P. 2d 952. There we said, in speaking of a letter received by the plaintiff, setting forth the details of a transaction:

"We have before us a case where the party claiming to have been defrauded was given a statement of the transaction as actually completed, and a statement which he was not prevented from reading at the time of receipt or at any time thereafter. He cannot now be heard to say he was under no obligation to examine it to determine whether it stated his version of the transaction. Had he read it when he received it, or when he did read it, had he taken note of the fact he should have read it promptly on its receipt by him, he would have known that he had two years from that date on which he received it to bring his action to rescind or to recover damages as the case might be."

In this case a reasonable person could not read the answer filed by defendants without learning that defendants claimed the seven-eighths working interest under these instruments. G. S. 1949, 60-306, third subparagraph, provides that an action for relief on the ground of fraud must be commenced within two years of the time the cause of action shall accrue, but that the cause of action shall not be deemed to have accrued until the discovery of the fraud. The rule is very well stated in *Walline v. Olson,* 84 Kan. 37, 113 Pac. 426. There we said:

"There can be no question that the action was not brought within two years from the time the alleged fraud should have been discovered."

The statute begins to run not necessarily when the plaintiffs actually learned of the fraud but when the surrounding facts and circumstances are such that a reasonable person would have learned it.

The trial court ruled correctly when it sustained defendants' demurrer to the amended reply. Once this demurrer was sustained there was no issue remaining in the case and the motion of defendants for judgment was properly sustained.

The judgment of the trial court is affirmed.