**PERPETUAL ROYALTY CORPORA-
TION, United Royalty Corporation, and
Aberdeen Oil Company, Inc., Plaintiffs,**

v.

**Sarah KIPFER and Ward A. McGinnis,
Defendants.**

**No. W–3089.**

United States District Court
D. Kansas.

June 10, 1965.

Hyde, Freeman & Hyde, Oklahoma City, Okl., Dale B. Stinson, Jr., Wichita, Kan., for plaintiffs.

Enos E. Hook, Wichita, Kan., E. E. Pedroja, Eureka, Kan., for Ward A. McGinnis.

George C. Spradling, Wichita, Kan., Carl Chase, Eureka, Kan., for Sarah Kipfer.

**WESLEY E. BROWN, District Judge.**

This suit was commmenced by plaintiffs to quiet title against defendants in certain properties in Greenwood County, Kansas and for an accounting. On March 4, 1964, defendant Cities Service filed a motion to dismiss for lack of diversity jurisdiction as to it, and on March 19, 1964 plaintiffs voluntarily dismissed without prejudice as against Cities. On March 12, 1964 defendants McGinnis and Kipfer filed separate motions for summary judgment. On June 19, 1964 the parties were granted time in which to submit a stipulation of facts for the determination of the issues involved.

The parties filed a stipulation of facts on November 6, 1964 and also filed a Pre-trial Order on the same date. As we read the Pre-trial Order, the summary judgment motion has been abandoned and the parties have now waived a trial and consented to the court's determining the case on the stipulated facts. A supplement to the stipulated facts was filed January 27, 1965 and the final briefs were filed March 12, 1965.

One of the issues listed in the Pre-trial Order was whether plaintiffs were precluded from prosecuting this suit under Kan.Stat.Ann.1965, 60–502. This section of the new Kansas civil code was invalidated by the state supreme court in Great Lakes Pipe Line Co. v. Wetschensky, 193 Kan. 706, 396 P.2d 295 (1964), and thus the issue is removed from the case at bar.

Most of the contentions of this lawsuit either center around or are related to a quiet title suit and decree brought by one Fred C. Kipfer in 1946. Copies of all proceedings in that 1946 Greenwood County, Kansas suit are attached to the stipulation of facts herein. Defendant Sarah Kipfer is the widow of Fred C. Kipfer, and defendant Ward McGinnis is lessee of the land involved and has been producing oil from the land since 1956.

Defendants to the 1946 quiet title action were numerous and included plaintiff United Royalty Corporation [United] and the predecessors of plaintiffs Perpetual Royalty Corporation [Perpetual] and Aberdeen Oil Company, Inc. [Aberdeen].

Plaintiffs' claims and contentions will be briefly summarized from the stipulated facts. We add that the stipulation of facts and supplement thereto are incorporated herein by reference as our findings of fact.

Plaintiffs claim mineral interests in Section 6, Township 24, S, Range 11 E, Greenwood County as follows:

*United* claims an undivided one-fourth interest in and under the Northwest Quarter of Section 6.

*Aberdeen* claims an undivided one-fourth interest in and under the Southwest Quarter of Section 6.

*Perpetual* claims an undivided three-sixteenths interest in and under the West half of Section 6; and undivided three-sixteenths interest in and under the Northeast Quarter of Section 6; and an undivided one-half interest in and under the Southeast Quarter of Section 6.

The chains of title under which plaintiffs claim may be briefly summarized thus:

(a) UNITED: United claims under a conveyance to it from the O. K. Herndon Royalty Company in 1926 by mineral deed. Its predecessors include E. E. Parkin and wife; Grant Jeffers; and O. K. Herndon. United was a named defendant in the 1946 quiet title action, as were its predecessors.

(b) ABERDEEN: Aberdeen claims under conveyance from Monarch Royalty Corporation and correction conveyance from Monarch Royalty Corporation and Monarch Royalty Corporation of Kansas,

both dated in 1959, some three years after defendant McGinnis commenced current production on the land. Aberdeen's predecessors include E. E. Parkin and wife; Grant Jeffers and O. K. Herndon; O. K. Herndon, Trustee; O. K. Herndon Royalty Company; and Royalty Products Company. All of Aberdeen's predecessors were named defendants to the 1946 quiet title suit. Aberdeen took by quitclaim conveyance from Monarch and Monarch of Kansas without any warranties of title. It should be added that plaintiffs on page 9 of their Reply Brief state "Monarch Royalty Corporation of Kansas was a Kansas Corporation." But the Stipulation of Facts, paragraph 11, page 8, states "Monarch Royalty Corporation of Kansas, a corporation organized under the laws of the State of Delaware, was authorized to do business in the State of Kansas on August 25, 1930 and withdrew from the State of Kansas on April 26, 1952." As we read the stipulated facts, Monarch of Kansas was a Delaware corporation, not a Kansas corporation as alleged in plaintiffs' Reply Brief.

(c) PERPETUAL: Perpetual claims under conveyances from Paul Fleeger and Evelyn Grisso [sole heirs of D. P. and Lillie Fleeger, deceased] in 1963, and from Florence I. Bitler in 1964—seven and eight years respectively after defendant McGinnis commenced current production on the land. The 1963 conveyance to plaintiff Perpetual from Paul Fleeger and Evelyn Grisso was by quitclaim conveyance. The 1964 conveyance from Florence I. Bitler to plaintiff Perpetual was likewise by quitclaim. Perpetual also claims under a 1962 conveyance from Perpetual Royalty Corporation, a Delaware corporation. It should be pointed out that plaintiff Perpetual is an Oklahoma corporation. The Delaware corporation which conveyed to plaintiff Perpetual in 1962 acquired its interest in 1953 from W. H. Rechtern. The 1953 conveyance was by mineral deed with warranty of title; the 1962 conveyance from Perpetual, a Delaware corporation to plaintiff Perpetual, an Oklahoma corporation was by quitclaim deed.

Perpetual's predecessors include E. E. Parkin and wife; C. P. Van Graafeiland, Trustee; A. J. Schleuter; Wm. H. Rechtern; D. P. Fleeger; Lillie Fleeger; and Florence I. Bitler. All of Perpetual's predecessors who claimed some interest prior to 1946 were named defendants to the 1946 quiet title suit. Florence *I.* Bitler was named therein as Florence *E.* Bitler and this is the subject of some controversy at bar.

In 1953, Rechtern conveyed to Perpetual Royalty Corporation (a Delaware corporation) who conveyed to Perpetual Royalty Corporation (an Oklahoma corporation and plaintiff herein) in 1962. Perpetual also took a conveyance in 1922 from Van Graafeiland and in turn conveyed to Schleuter in 1940.

In summary, plaintiff United's claim to title predates the 1946 quiet title suit and United was a named defendant therein; plaintiff Aberdeen acquired its claim by quitclaim some 13 years after the 1946 quiet title suit and some three years after defendants commenced the current production on the land. Plaintiff Perpetual (the Oklahoma corporation) was of record at one time prior to 1946, but divested itself prior to 1946. Plaintiff acquired its claim by quitclaim some 16 to 18 years after the 1946 quiet title suit and some 6 to 8 years after defendants commenced current production on the land. It is stipulated that defendant Kipfer and her predecessors have been in possession of Section 6 and have been claiming a full fee title including title to all of the minerals since 1946. Perpetual, the Delaware corporation is not a party to this suit; it is a separate entity and for our purposes we consider plaintiff Perpetual's present claims to have been acquired by quitclaim in 1962 to 1964.

Plaintiffs have the burden of establishing their claims to title on the

basis of the stipulated facts. Plaintiffs contentions may be summarized thus:

(a) That a mineral deed from W. H. Freeman, the original owner of the land, to E. E. Parkin in 1921 conveyed an undivided one-half interest in the oil, gas and other minerals in and under said land. Defendants contend it conveyed only an undivided one-sixteenth interest. As we understand this contention, it will become important only in the event plaintiffs are successful in quieting title.

(b) That the decree in the 1946 quiet title suit in so far as it purports to quiet title to the interests in oil, gas and minerals now claimed by them is a nullity and may now be collaterally attacked because notice in the suit was by publication only (in the Madison, Kansas News, an authorized newspaper). Plaintiffs contend this publication notice does not meet the due process requirements of the Fourteenth Amendment.

(c) That the 1946 quiet title decree insofar as it relates to the oil, gas and minerals now claimed by plaintiffs is void because it was rendered by default on a petition which on its face was insufficient to divest a paramount title.

(d) That the statute of limitations was not set in motion in 1946 and was not set in motion prior to 1956.

(e) That leases executed to Eisenhour in 1953 and to Morris in 1954 and the drilling of a dry hole by Eisenhour do not establish title in defendant by adverse possession.

(f) That Kan.G.S. 1949, 60–3133 does not apply to a judgment that is a nullity or which violates due process.

(g) That their claims are not barred by laches.

We shall deal with the laches question first, thus avoiding for the moment possible constitutional issues. For the purposes of considering the laches issue, it will be assumed, without so holding, that the 1946 quiet title decree is void for one reason or another.

 It is generally considered that where, as in Kansas mineral interests create interests in realty, such mineral interests cannot be lost through mere abandonment. The equitable doctrine of laches, however, acting as a form of estoppel, can preclude a plaintiff from asserting in equity an alleged legal claim or interest under given factual patterns. A factual background of what plaintiffs and their predecessors have or have not done is therefore essential. Accordingly, a brief outline of stipulated facts pertaining to the laches issue will be given of which plaintiffs and their appropriate predecessors would have had at least constructive notice.

No oil or gas was produced from the land involved from 1934 until May of 1956 when defendant McGinnis brought in his first well. Neither plaintiffs nor any of their predecessors in title have ever executed an oil and gas lease on the land or drilled any oil and gas wells thereon or produced any oil or gas therefrom except the production obtained under the Parkin lease, which leasehold and wells were abandoned in 1934.

Fred C. Kipfer and his successors (including defendant Sarah Kipfer) have been in continuous possession of the land involved since February 28, 1946 and have claimed to own said land in fee simple from that date, including all the oil, gas and other minerals therein. In 1953 Fred Kipfer and his wife Sarah (defendant herein) executed an oil and gas lease to H. C. Eisenhour purporting to cover all of Section 6. A dry hole was drilled and the lease expired by its own terms.

In 1954 Fred Kipfer and his wife Sarah (defendant herein) executed an oil and gas lease to F. E. Morris purporting to cover all of the section here involved. No wells were drilled and the lease apparently expired by its own terms on or about April 1, 1955.

Fred Kipfer died intestate in 1954 and left his wife Sarah and a daughter Louise as his heirs at law. His estate was probated in Greewood County, Kansas and the final decree of distribution was entered in 1955 finding that Fred Kipfer died owning *all* of Section 6 here involved. Defendant Sarah Kipfer filed a partition suit against Louise Kipfer in

1955 in the Greenwood County District Court. The court ordered that all of Section 6 here involved be set aside to defendant Sarah Kipfer.

Plaintiffs contend that Sarah Kipfer cannot own more than an undivided one-half interest in the minerals under the land in question; yet in 1956 and 1957 Sarah Kipfer conveyed fractional shares of the minerals to Arthur Lyke and B. W. Crone. The total fractional share so conveyed by Sarah Kipfer to Lyke and Crone exceeds one-half of the minerals as to the Northwest, Northeast and Southwest quarters of said Section 6. The Stipulation of Facts, paragraph 17, lists the Lyke conveyance as having been made in 1946, but a study of the conveyance itself [Exhibit GG] shows it was made in 1956. In the Lyke conveyance, defendant Sarah warranted that she was lawfully seized of a fee simple absolute in and to all of Section 6 and warranted the title to be free from all former grants and the like except an oil and gas lease.

Sarah Kipfer executed an oil and gas lease to defendant Ward McGinnis in 1955 purporting to cover all of Section 6 here involved. This lease, as well as the earlier leases and conveyances made by Sarah Kipfer, was duly recorded. In 1956, McGinnis as lessee completed a producing well and recorded an affidavit of production. Since that time, McGinnis has completed a total of ten producing wells on the land—six on the Southwest quarter; three on the Northwest quarter; and one on the Southeast quarter. The Northeast quarter has no producing wells. McGinnis has at all time operated Section 6 as an entity with only one tank battery for the entire section.

Cities Service Oil Company has been and is purchasing the oil runs from the McGinnis lease and has paid the proceeds therefrom seven-eighths to McGinnis as lessee and one-eighth to Sarah Kipfer and her assigns (Lyke and Crone); Cities is now retaining one-half the proceeds in a suspense account pending the outcome of this litigation. From 1956 to the end of 1963, the McGinnis lease has produced oil of an approximate value of $852,000.00. No proceeds from oil runs have been paid to plaintiffs.

We have then, a case in which Sarah Kipfer and her predecessors have possessed Section 6 and claimed fee title—including the mineral estate now being asserted by plaintiffs—for some 17 or 18 years prior to the filing of this suit. Plaintiffs claim an undivided mineral interest in the land, which would give them the right to develop the land for oil and gas production. Neither plaintiffs nor any of their predecessors have done so since 1934. Plaintiff United waited for some 8 years after the current production and profit commenced before asserting its claim. Plaintiffs Perpetual and Aberdeen did not acquire their alleged interests in the minerals until from 3 to 8 years after current production and profits commenced. Their interests were acquired by quitclaim and they acquired in the bargain any burdens of laches applicable to their predecessors as well as benefits of claimed interests. Nowhere in the briefs of plaintiffs do we find even an attempted excuse for the delay between the advent of the admittedly adverse claim to the minerals made by Sarah Kipfer and her predecessor and the filing of this suit. ("Adverse claim" is not here used as a term of art; it merely indicates that since 1946, Sarah Kipfer and her predecessor have claimed title to all the mineral interests in the land involved).

Plaintiffs strongly urge that mere passage of time is not enough to invoke the doctrine of laches and contend that some prejudice to defendants must be shown by such delay. But it is stipulated that since 1946, the Kipfers have acted under the assumption and conviction that they held full title to Section 6—including title to all mineral interests therein. In reliance on this conviction, three leases covering all of Section 6 were executed; fractional shares of minerals in excess of what plaintiffs claim defendant owns were conveyed—and in the mineral conveyance to Lyke in 1956, Sarah Kipfer warranted she had full fee title in and to all of Section 6. Further, in reliance on

this conviction, McGinnis has operated the section as an entity with only one tank battery, seriously impairing if not precluding the apportionment of production among severed mineral estates to the various quarters of the section should that become necessary.

During all this time, neither plaintiffs nor their predecessors took any affirmative step to give defendants any indication that their claims of ownership were not correct or were challenged. Plaintiffs and their predecessors remained totally and completely passive until some eight years after current production commenced and showed the value of the property before they gave any indication that defendant Sarah Kipfer's mineral estate ownership was other than she and her husband had contended since 1946. Further, it must be assumed that the Kipfers have paid taxes on the entire section, and have done many other things during all of the years in which plaintiffs and their predecessors have been content to sleep on their alleged rights.

In short, the record discloses no excuse for the long delay between defendant's assertion of ownership and acts in reliance thereon and plaintiffs' current assertion of rights in the minerals. Plaintiffs have lacked diligence in electing to call on a court of equity to enforce their alleged claims.

■■■ There can be no doubt that plaintiffs are seeking equitable relief at bar. It is also clear that laches is an equity device to bar bare legal claims in certain instances. We feel the following language to be apposite to the case at bar:

"Courts of equity will regard long passage of time in asserting claims with disfavor apart from any particular statute of limitations. The doctrine of laches is designed to bar stale claims. The plaintiff argues that mere passage of time is not enough to invoke the doctrine. It may be readily assumed that defendant has paid taxes on the real estate, * * * and done many other things during all of the

years in which plaintiff and the other heirs * * * have been content to sleep on their alleged rights. Nowhere in the amended petition do we find even an attempted excuse for the delay of thirteen years between the death of the mother and the beginning of this lawsuit." Degenhardt v. Degenhardt, 183 Kan. 260, 267, 326 P.2d 288, 294 (1958).

Further, it has been recognized that while mere lapse of time may ordinarily be insufficient to make laches applicable, "it has been held sufficient to make the doctrine applicable in cases where it would be clearly inequitable to permit the enforcement of bare legal rights." McKee v. McKee, 154 Kan. 340, 343, 118 P. 2d 544, 547, 137 A.L.R. 880 (1941).

■■■ We need no citation of authorities to state that what constitutes reasonable time within which a plaintiff must assert his claim depends on the facts and circumstances of a given case. Ordinarily, some action should be taken with reasonable promptness after the facts become easily ascertainable to a plaintiff, provided the delay works a disadvantage to others. See Pratt v. Shell Petroleum Corporation, 100 F.2d 833 (10th Cir. 1938). And courts of equity are not bound by statutes of limitations, but may determine a given case according to equities which condition it. See Shell v. Strong, 151 F.2d 909 (10th Cir. 1945).

■■■ Additionally, the doctrine of laches is peculiarly appropriate to oil and gas and mineral interests which are subject to relatively rapid deviations in value. The Kansas Supreme Court has said:

"The doctrine that a person claiming an interest or a right may be required to assert it promptly is especially applicable to oil and gas properties which are subject to rapid fluctuation in value. That [a claimant] will not be permitted to engage in speculative delay until the value of such property has greatly appreciated, is definitely

established." Malone v. Young, 148 Kan. 250, 262, 81 P.2d 23, 30 (1938). In the case at bar plaintiffs and their predecessors made no attempt to develop the interest they presently claim from 1934 forward. And they remained utterly passive for some eight years while defendants were expending money, efforts and enterprise in developing the land for oil. Plaintiffs and their predecessors remained silent during some eight years while Cities Service paid oil run proceeds to defendants and their assigns on a seven-eighths/one-eighth basis. Plaintiffs and their predecessors asserted no rights in or to the minerals during this time period. We feel that under such circumstances *Malone* is applicable, and that it would be patently inequitable to entertain plaintiffs' claims after such prejudicial inaction on their part and on the part of their predecessors.

In Starkweather v. Jenner, 216 U.S. 524, 530–531, 30 S.Ct. 382, 54 L.Ed. 602, 605 (1910), the Court indicated under the facts there present that a delay of four years during which there had been a large appreciation in value of the property was an unreasonable delay.

The conclusion is inescapable that plaintiffs and their predecessors stood silently by from 1946 when the Kipfers began claiming all the mineral interests in the land until 1964 when this suit was filed. The stipulated facts further show that plaintiffs and their predecessors remained silent for eight years while defendants expended time, energy and money drilling producing wells, and took no action while during that time some $852,000 worth of oil was being taken from "their land". Plaintiffs do not contend that they did not know about the drilling of the producers in 1956. Plaintiffs and their predecessors could have asserted their claimed mineral interests in 1946 when the Kipfers first commenced claiming full ownership of the minerals; and they could have asserted their alleged claims in 1953 and 1954 when Eisenhour was drilling on the land what turned out to be a dry hole.

And they could have asserted their claim in 1956 when defendants brought in a producer. Evidently plaintiffs and their predecessors felt content to say nothing while defendants expended money and effort attempting to develop the land. After the land proved to be valuable for oil, plaintiffs brought this action to quiet title and for an accounting. In our opinion to permit plaintiffs to assert their alleged claims after they and their predecessors were silent and inactive so long would be inequitable and unjust. They have not been possessed of that diligence which equity requires under such circumstances. Cf. Maune v. Landowners Oil Association, 170 Kan. 18, 223 P.2d 1001 (1950).

Since we conclude that plaintiffs are barred by laches from asserting their claims, we do not reach the potential due process and constitutional issues presented by this case, nor do we reach the other issues listed in the Pre-Trial Order.

The relief sought by plaintiffs is denied. The foregoing memorandum embodies the facts as stipulated and our conclusions of law, pursuant to Fed.R. Civ.P. 52(a), believed by the court to be necessary.

Prevailing counsel shall prepare, circulate and submit an appropriate order.